KNOXVILLE POWER & LIGHT COMPANY v. W. F. BARNES.*

(*Knoxville.* September Term, 1927.)

Opinion filed, November 21, 1927.

1. WORKMEN'S COMPENSATION. FINDINGS OF FACTS CON-
CLUSIVE. APPEAL.

Upon review by this Court the most favorable view of the evidence
in support of the petitioner's claim must be accepted, and if there
is material evidence to support the findings of the Trial Judge
his conclusion upon the facts is final. (Post, p. 188.)

Citing: Milne v. Sanders, 143 Tenn. (16 Thomp.), 603; Vester Gas
Range Co. v. Leonard, 148 Tenn. (21 Thomp.), 672.

2. WORKMEN'S COMPENSATION. WILLFUL FAILURE. WILL-
FUL MISCONDUCT.

Willful failure to observe a rule or use a safety appliance is not a
mere voluntary failure. Willful misconduct means more than
negligence. It carries the idea of deliberation and intentional
wrong doing. (Post, p. 188.)

Citing: N. C. & St. L. Ry. v. Coleman, 151 Tenn. (24 Thomp.), 448.

3. WORKMEN'S COMPENSATION. METHOD OF CALCULA-
TION. FORMULA.

Where the proof shows an injury to the left arm impairing its use
twenty per cent, and to the right hand impairing its use twenty-
five per cent, the compensation should be based upon the injury
resulting in disability to each of the members in the degree stated,
—formula stated in the opinion. (Post, p. 189.)

4. WORKMEN'S COMPENSATION. INJURY TO SEPARATE
MEMBERS. COMPENSATION.

Injury producing disability to separate members and increasing
the loss cannot be joined to decrease the compensation intended
by the statute. (Post, p. 190.)

Citing: Sec. 28, chapter 123, Acts of 1919.

---

*Injury received while doing prohibited act as injury arising out
of and in the course of the employment, see annotation in L. R. A.,
1918F, 914; 23 A. L. R., 1172; 26 A. L. R., 167.

5. **WORKMEN'S COMPENSATION. METHOD OF CALCULATION.**

While the Workmen's Compensation Statute provides for compensation for four hundred weeks for the loss of both arms or both hands as against compensation of two hundred weeks for the loss of one arm, and one hundred and fifty weeks for the loss of one hand, these provisions in connection with others evince an intention to apportion the compensation according to the degree of the employee's impaired capacity to earn. (Post, p. 191.)

Citing: Casey-Hedges Co. v. Lynch, 147 Tenn. (20 Thomp.), 177.

6. **WORKMEN'S COMPENSATION. DEGREE OF DISABILITY. CALCULATION. ACCEPTANCE. APPEAL.**

Where the method of determining the compensation was not objected to and where the impairment was used to reduce the amount of the weekly allowance instead of reducing the time for which it should run, this court will not find error thereon. (Post, p. 192.)

Citing: Cherokee Sand Co. v. Green, 152 Tenn. (25 Thomp.), 412.

---

*Headnotes 1. Workmen's Compensation Acts, C. J., section 127; 2. Workmen's Compensation Acts, C. J., section 114; 3. Workmen's Compensation Acts, C. J., section 85 (Anno); 4. Workmen's Compensation Acts, C. J., section 89 (Anno).

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.— HON. A. C. GRIMM, Judge.

CHAS. H. SMITH, for plaintiff in error.

S. E. N. MOORE and W. P. MONROE, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

Knoxville Power & Light Company, the employer, appealed from an award to W. F. Barnes, the employee, under the Workmen's Compensation Act, Chapter 123, Acts of 1919. Through assignments of error it is urged:

First. That the employee's injury resulted from wilful neglect or refusal to use safety appliances furnished by the employer for his protection, and recovery should be denied under Section 10 of the Act.

Second. If awarded, the employee is not entitled to compensation for loss of use of the left arm, and for loss of use of the right hand, the award being precluded by Section 28, Subsection (c), which provides:

"Where an employee sustains concurrent injuries resulting in concurrent disabilities, he shall receive compensation only for the injury which produced the longest period of disability."

B. L. Beeler and the petitioner were engaged in transferring wires that carried 2300 volts of electricity, from upper to lower arms on the poles. Beeler was a first class lineman and Barnes was a second class lineman. It was the custom of one lineman to stand watch while the other worked upon the poles. Beeler, an experienced lineman, went upon the poles and removed the wires without rubber gloves, or other safety devices, while Barnes stood on the ground and watched. Referring to the work, Barnes testified:

"A. Beeler had worked them all the time with his naked hands without gloves, and I asked him if he needed gloves and he said no.

"Q. Did you know they were transferring 2300 volt wires? A. I didn't know they were hot; he told me Mr. Scarlett had killed three of these wires, and we were only working on three, and he had been working without gloves, and I assumed he was talking about these same three wires. . . .

"Q. You discussed with Beeler whether or not it was proper or necessary for your safety to use rubber gloves while working on these wires? A. Yes, sir.

"Q. And Mr. Beeler told you that Mr. Scarlett had killed three of the wires? A. Yes, sir."

Beeler testified:

"Q. Did you and Mr. Barnes discuss whether you had better wear gloves that morning? A. I do not recall discussing about gloves; something was said about we had better get some rubber goods from the truck.

"Q. Who said that? A. Mr. Barnes.

"Q. What took place? A. I remember working without rubber gloves and maybe said the truck was around the corner, and I said we will work this pole and then send and get the rubber goods.

"Q. When did Mr. Barnes suggest you had better send and get rubber goods? A. On the same pole he got burned on.

"Q. After you suggested the truck was around the corner and you would get them the next pole, what did he say? A. He went to work.

"Q. Had you told him it was not necessary to use gloves? A. I don't know as I did. I don't make a practice of telling men not to wear gloves.

"Q. Are you the men's boss? A. No, sir.

"Q. Were you in the habit of telling them what to do? A. I was head lineman.

"Q. What authority did you have over the other men or over Barnes? A. I was supposed to be a first class lineman; he left me there to do the work and see that it was done right.

"Q. You do not mean you were a better lineman than some body else? A. Well, it means first class. A first class lineman knows his business all right.

"Q. How did it happen that Barnes was changing the wires on this pole instead of you? A. I had worked all

of the poles up to there and he suggested he would do the work on that pole.

"Q. You went to Mr. Barnes that morning after Mr. Burris instructed you to remove these wires, and told him what to do? A. Yes, sir.

"Q. You had been told before you went down there that these wires—some wires had been killed. A. Yes, sir, we all knew."

Barnes testified that Beeler assigned him to his duty that day of transferring the wires, and while Beeler was on the pole he said Mr. Scarlett had killed three of the wires; that they were only handling three wires, and when he went upon the pole he assumed that the wires that Beeler and he were working on were dead, that is, carried no current.

(1) Upon review the most favorable view of the evidence in support of the petitioner's claim must be accepted. If there is material evidence to support the finding of the trial Judge his conclusion upon the facts is final. *Milne* v. *Sanders,* 143 Tenn., 603; *Vester Gas Range Co.* v. *Leonard,* 148 Tenn., 672.

(2) The evidence referred to sustains the conclusion of the trial Judge that Barnes' failure to observe the rule was not wilful, amounting to misconduct suggesting deliberation and intentional wrongdoing. The evidence referred to with other evidence in the record not quoted, sustains the conclusion that Barnes omitted the use of the rubber gloves because he supposed from Beeler's conduct and statements that the three wires they were transferring had been killed and were not dangerous. The evidence does not suggest that Barnes acted upon his own judgment and in wilful disregard of the rules.

". . . According to the great weight of authority, 'wilful failure' to observe a rule or use a safety appli-

ance is not a mere voluntary failure. Otherwise contributory negligence would defeat a recovery under a compensation statute. Wilful misconduct means something more than negligence. It carries the idea of deliberation and intentional wrongdoing." *N. C. & St. L. Ry.* v. *Coleman,* 151 Tenn., 448.

(3) Upon the other proposition the trial Judge found from the evidence that petitioner sustained injuries aris·ing out of and in the course of his employment resulting in temporary total disability for eight weeks, compensable at $12 a week, and that the medical bill was $60. No objection is made to these items. Objection is to the award of $12 a week for seventy-three weeks, determined by subtracting the eight weeks covering temporary total disability from the maximum period of two hundred weeks, the time allowed for loss of use of an arm, and subtracting the eight weeks from the maximum period of one hundred fifty weeks allowed for loss of use of a hand, and finding the proportion that twenty per cent for partial loss of use of an arm, and twenty-five per cent for partial loss of use of a hand, bears to the corresponding period allowed for total loss of each of these members. For example:

$$200 - 8 = 192 \times .20 = 38.4$$
$$150 - 8 = 142 \times .25 = 35.5$$

73.9 @ $12.00 per week.

The proof showed injury to the left arm impairing its use twenty per cent, and to the right hand impairing its use twenty-five per cent, and the foregoing is based upon the injury resulting in disability to each of these members in the degree stated.

The result of this method of applying the statute was to reduce the time covered by the compensation of $12 a week according to the ratio of the partial to the total loss of use of each of the members.

*(4)* The injury to the left arm and the injury to the right hand were distinct injuries, resulting in separate disabilities. They do not concur in the sense of the Statute. Total loss of a hand and total loss of the use of the opposite arm, in a literal sense, concur to destroy the employee's ability to perform manual labor which requires the use of both arms and both hands, and so might partial disability to these separate members concur to produce a degree less than the total. But such disabilities, operating to prevent the coordinate use of the opposite members and destroy or impair the ability to work, are not concurrent in the sense of the Statute. Provisions of the Act hereafter quoted, evince an intention that the compensation for disability shall be graduated in the degree of the employee's capacity to earn as a result of the disability. Injury producing disability to separate members and increasing the loss cannot be joined to decrease the compensation intended by the Statute. Section 28 provides:

"That the following is the schedule of compensation to be allowed employees under the provisions of this Act; (a) for injury producing the temporary total disability fifty per centum of the average weekly wages, as defined by this Act, subject to the maximum compensation of (Ch. 84, Acts 1923), $12 per week. . . . This compensation shall be paid during the period of the disability of the employee . . . not to exceed three hundred weeks."

"(c) For permanent partial disability the compensation shall be upon the extent of such disability. In cases included by the following schedule the compensation shall be that named in the schedule, to-wit:

"'For the loss of a hand, fifty per centum of average weekly wages during one hundred and fifty (150) weeks.

" 'For the loss of an arm, fifty per centum of the average weekly wages during two hundred (200) weeks.' "

(5) It will be observed that the Act provides maximum compensation for four hundred weeks for the loss of both arms or both hands as against compensation of two hundred weeks for the loss of one arm, and one hundred fifty weeks for the loss of one hand. These provisions in connection with others evince an intention to apportion the compensation according to the degree of the employee's impaired capacity to earn. The other provisions are:

"Where an employee sustains concurrent injuries resulting in concurrent disabilities, he shall receive compensation only for the injury which produced the longest period of disability, but this section shall not affect liability for the concurrent loss of more than one member, for which members compensations are provided in the specific schedule and in subsection (e) below."

"In case of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the member bears to its total loss."

"In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation in and by said schedule provided shall be in lieu of all other compensation."

The trial Judge observed the rule given in *Casey-Hedges Co.* v. *Lynch*, 147 Tenn., 177, by giving the maxi-

mum weekly allowance for loss of total use, and graduated the time according to the degree of impairment to the use of right hand and left arm.

(6) In *Cherokee Sand Co.* v. *Green,* 152 Tenn., 412, the process used in the trial Court to determine compensation for the thirty-five per cent permanent partial disability in the use of the leg, was not objected to by the employee. The impairment was used to reduce the amount of the weekly allowance instead of to reduce the time for which 'it should run. Instead of awarding $12 a week for the reduced time, the Court awarded $3.90 a week for the maximum time, less the weeks covered by temporary total disability. The employer was satisfied with that method of calculation, or at least made no complaint, notwithstanding it did not inure to his benefit.

We find no error in the decree.   Affirmed.