Randy CRUMP, Plaintiff-Appellee,

v.

B & P CONSTRUCTION COMPANY, Defendant-Appellant.

Supreme Court of Tennessee, at Jackson.

Jan. 21, 1986.

Robert M. Burton, Memphis, for defendant-appellant.

Gary K. Smith and Bruce E. Williams, Memphis, for plaintiff-appellee.

## OPINION

TATUM, Special Justice.

This is a Workers' Compensation case in which four issues are presented for our review. The principal issue involves the construction of T.C.A. § 50–6–207(3)(C), which deals with concurrent injuries resulting in concurrent disabilities.

On July 21, 1982, the plaintiff-appellee, Randy Crump, was installing underground cables for a television line while in the course of his employment for the defendant-appellant, B & P Construction Company, when he was surprised by an unleashed dog. While attempting to flee from the dog, he tripped over a pile of lumber and

fell, fracturing his left wrist. He immediately reported the injury to his foreman and was referred by his employer to Dr. Joseph C. Boals, III, an orthopedic surgeon, who continuously treated the plaintiff for this injury. The bone in the left wrist did not heal properly and it was later necessary for the plaintiff to undergo a series of four operations. The last surgery was performed in March, 1984 when the bones of the left wrist were fused together. The plaintiff suffered continuous and extensive pain and anxiety over a long period due to the wrist injury. He could not flex or extend his left hand.

Dr. Boals testified that while he was treating the plaintiff, the plaintiff developed a very pronounced psychogenic overlay due to his prolonged absence from work and the necessity of continuing long-term medical treatment. Dr. Boals testified that this mental state took the form of extreme depression, anxiety, and emotional upset. The plaintiff's depression and paranoia progressed to the point that Dr. Boals feared that the plaintiff would do physical harm to himself and referred him to see Dr. Roy Barnes, a psychiatrist. Dr. Boals was of the opinion that due to the wrist injury, the plaintiff suffered permanent partial disability of 28 per cent to the left arm.

Dr. Barnes testified that the plaintiff suffered post-traumatic stress disorder with severe depression or dysthymiac disorders. He attributed the plaintiff's psychiatric problems to the wrist injury. Dr. Barnes observed that the plaintiff was a potential suicide victim and that his mental condition required hospitalization. Dr. Barnes characterized the plaintiff's depression as being moderate at the time of trial, but stated that the depression could become severe if the plaintiff was placed under stress. The psychiatrist further testified that the plaintiff would need follow-up care for the next four to five years and that he would need to be followed closely for at least one year to eighteen months. Dr. Barnes was of the opinion that the plaintiff had suffered 50 per cent permanent partial disability to the body as a

whole as a result of his psychiatric condition. This disability to the body as a whole was in addition to the disability plaintiff suffered to the left arm.

The trial court's judgment, in pertinent part, stated as follows:

"This cause came on to be heard on the 17th day of December, 1984, upon the Complaint of Plaintiff, Answer of the Defendant, testimony of the witnesses for the Plaintiff, statement of counsel for the respective parties and the entire record in the cause and at the conclusion of all of the proof the court took the matter under advisement and now finds that the Plaintiff is entitled to receive worker's compensation benefits equal to 50% (or 100 weeks) permanent partial disability to the left upper extremity; additionally, the Plaintiff is entitled to be compensated for permanent partial disability in the amount of 35% as to the body as a whole (or 140 weeks) as a result of the psychiatric condition; ...
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. That the Defendant pay to the Plaintiff permanent partial disability benefits for a total of 240 weeks representing 50% permanent partial disability to the left upper extremity and 35% permanent partial disability to the body as a whole as a result of the psychiatric condition. Provided further that the Defendant shall be entitled to statutory commutation of the said 240 weeks yielding payment for 210.3186 weeks for a total of $28,603.38."

Citing T.C.A. § 50-6-207(3)(C), the defendant/employer says that the trial court erred in awarding compensation separately for the injury to the body as a whole and the injury to the left arm. The employer argues that since the concurrent injuries resulted in concurrent disabilities, the trial court should have ordered compensation to run concurrently and not consecutively. T.C.A. § 50-6-207(3)(C) provides:

"When an employee sustains concurrent injuries resulting in concurrent disa-

bilities, he shall receive compensation only for the injury which produced the longest period of disability, but this section shall not affect liability for the concurrent loss of more than one member, for which members compensations are provided in the specific schedule and in subdivision (4)(B) below. In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation in and by said schedule provided shall be in lieu of all other compensation;"

The plaintiff/employee contends that the two injuries and disabilities are not concurrent within the meaning of the statute. He says that the trial judge was authorized to make separate awards based on an injury which causes permanent disability to the body as a whole and another injury which causes permanent disability to the arm. We disagree. It is our opinion that the trial judge should have taken the permanent disability attributed to the arm and applied it to the body as a whole, in conjuction with the disability caused by plaintiff's psychiatric condition.

The "concurrent injuries" in this case resulted in "concurrent disabilities." The word "concurrent" conveys the meaning of multiple injuries and multiple disabilities, acting in conjuction with each other and resulting in permanent disabilities to a scheduled member or to the body as a whole. See generally, *Black's Law Dictionary*, 5th Edition, p. 263. T.C.A. § 50–6–207(3)(A) sets forth a schedule specifying certain periods of disability benefits to which an injured employee is entitled for the loss of various members and for the loss of more than one member. Subsections (3)(F) and (4) set forth the periods for which permanent disability to the body as a whole will be compensated.

■ We interpret the phrase "the injury which produced the longest period of dis-

ability" in subsection (3)(C) to refer to the specific schedule periods in subsection (3)(A) and to the provisions pertaining to the length of benefit payments for unscheduled disabilities (the body as a whole). We do not interpret the term "longest period of disability" to refer to a single disability with which an employee with multiple permanent disabilities will suffer the longest. Obviously, if an employee has multiple permanent disabilities, the periods of disability for each will be the same; that is, they are permanent and thus none of the injuries will terminate before the others.

For example, if an employee receives a permanent partial disability to the right arm and concurrently receives an injury resulting in permanent partial disability to the right hand, he should be compensated for the disability to the arm, since the arm is compensable for the "longest period of disability." The arm is compensable for 200 weeks and the hand is compensable for only 150 weeks. T.C.A. § 50–6–207(3)(A), (ii), (m), and (*l*). Subsection (3)(C) was intended to prevent duplicate compensation. If an employee could be separately compensated for permanent partial disability to both the right arm and the right hand, the permanent partial disability to the hand and the arm together could exceed the total disability to the arm alone. *Cf. Queen v. New York Underwriters Insurance Co.*, 222 Tenn. 235, 435 S.W.2d 122 (1968); *Griffith v. Goforth*, 184 Tenn. 56, 195 S.W.2d 33 (1946)[1]. The permanent partial disability to the hand is attributed to the arm under subsection (3)(C). Both disabilities are considered in fixing the disability to the arm.

■ This principle is also applicable to unscheduled injuries that are compensated on the basis of disability to the body as a whole. T.C.A. § 50–6–207(3)(F) and (4)(A) and (B). The total loss of the body as a whole is compensable for a longer period than any specifically scheduled member or

---

**1.** In *Griffith,* the Court held that § 6878(C), Code 1932 (now § 50–6–207(3)(C)) does not apply when three or more injuries are sustained. The court also held that separate and distinct injuries to different members could not be "pyramided" to exceed the amount allowed for total permanent disability to the body as a whole.

combination of members. All specifically scheduled members are a part of the body as a whole. Thus a disability to the arm applies concurrently with an unscheduled disability in affecting the body as a whole.

In the present case, the plaintiff's disability to the arm should be rated to the body as a whole together with the unscheduled psychiatric disability. See *F. Perlman & Company v. Ellis,* 219 Tenn. 373, 410 S.W.2d 166 (1966).[2] The trial judge should determine to what extent the permanent partial disability to the arm acting in conjunction with the psychiatric condition affected the body as a whole. There should only be one overall rating of disability and that should be to the body as a whole.

There are several cases that purport to apply T.C.A. § 50–6–207(3)(C), but none of them interpret this equivocal subsection. See *Bon Air Coal & Iron Corp. v. Johnson,* 153 Tenn. 255, 283 S.W. 447 (1925); *Knoxville Power and Light Company v. Barnes,* 156 Tenn. 184, 299 S.W. 772 (1927); *S.C. Weber Iron & Steel Co. v. Jeffery,* 161 Tenn. 142, 29 S.W.2d 656 (1930).[3] Although we agree with the result in these cases, we are unable to harmonize the reasoning with subsection 3(C). We have therefore looked solely to the statute for an interpretation.

We are required to construe the Workers' Compensation Law liberally in favor of the employee and in furtherance of the sound public policy that dictated the legislation. The Statute is not to be construed strictly as in derogation of the common law but is to be treated as a remedial statute and construed accordingly. *Ogle v. Tennessee Eastman Corporation,* 185 Tenn. 527, 206 S.W.2d 909 (1947); *Owens v. Vulcan Materials Company,* 503 S.W.2d 87 (Tenn.1973); T.C.A. § 50–6–116. A construction of the statute declaring that subsection 3(C) prevented consideration of one permanent disability when an employee suffered concurrent injuries resulting in two permanent disabilities would not be in keeping with the spirit or the letter of T.C.A. § 50–6–116. *Owens v. Vulcan Materials Company, supra.* For the reasons stated, we think that the intent of subsection (3)(C) was to prevent separate compensation for a disabled scheduled member which is an essential part of a more paramount disabled scheduled member or of the body as a whole in case of an unscheduled disability.

We find no merit in the issue attacking the award of 35 per cent permanent partial disability of the body as a whole based on the psychiatric condition. The appellant's only plausible argument in support of this issue is that there is no medical proof that the traumatic neurosis is permanent. However, the record does not support the appellant's contention. Dr. Barnes, the psychiatrist, testified that the 50 per cent disability to the body as a whole resulting from the psychiatric condi-

---

**2.** The *Perlman* Court held:

"... The trial court found that the petitioner suffered not only loss of hearing, which is a scheduled loss, but also suffered speech impairment, dizziness, and severe headaches, all unscheduled injuries.

It is therefore the opinion of this Court that the trial court correctly found that the injuries suffered by the petitioner were not limited to scheduled losses, but included losses other than those scheduled in T.C.A. § 50–1007 (now T.C.A. § 50–6–207) and provided a proper basis for an award for permanent partial disability, under the so-called omnibus clause, the last paragraph in section (c) of T.C.A. § 50–1007. The authorities cited in respondents' brief, such as *Shores v. Shores* (1965) 217 Tenn. 96, 395 S.W.2d 388, go no further than to enunciate the proposition that under the Act, as amended, where the employee has suffered only a scheduled injury, an award on a basis of the body as a whole is interdicted."

**3.** These, and other cases seem to hold that "distinct disabilities arising from concurrent disability ... merge the major into the minor disability," and that when concurrent injuries result in concurrent disabilities, the minor disability is ignored in fixing compensation. None of these opinions attempt to define "concurrent injuries" and "concurrent disabilities" but each assert, without giving reasons, that the injuries and disabilities in each particular case are not concurrent. We have found no case in which the injuries or disabilities are said to be "concurrent."

tion is permanent. There was also medical proof establishing a causal connection between the wrist injury and the traumatic neurosis. This issue is without merit.

In the next issue, the defendant says that the trial court erred in awarding the plaintiff medical and hospital expenses for his October 17, 1984, hospitalization. Dr. Barnes testified that he wrote a report on October 8, 1984, saying that the plaintiff/employee was able to return to work. However, within three or four days after writing the report, Dr. Barnes determined that the plaintiff was suicidal and desired to hospitalize him. Dr. Barnes thought that the hospitalization was necessary to prevent the plaintiff from killing himself. Dr. Barnes "believed" that he telephoned the employer's insurance carrier and talked to a Mrs. Wren concerning the hospitalization. Dr. Barnes said that he knew that he tried to make contact with the insurance carrier in order to get the plaintiff in the hospital. No evidence was presented to refute this testimony and other evidence showing that the plaintiff was suicidal.

In *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 210–211 (Tenn.1983), this Court, speaking through Mr. Justice Drowota, said:

> "As its third assignment of error the Defendant challenges its liability for the medical bills introduced at trial. The Defendant avers that the Chancellor erred in admitting and considering the accuracy and reasonableness of the medical expenses through the testimony of the Plaintiff. In *Phillips v. Fleetguard Div. of Cummins Engl. Co.*, 480 S.W.2d 528 (Tenn.1972), this Court held that the chancellor erred in admitting and considering the accuracy and reasonableness of medical expenses through the testimony of the plaintiff, where competent evidence was available. In so holding, the Court placed the burden upon the claimant to establish the necessity and reasonableness of medical charges before recovery of the charges, under the workers' compensation laws, could be granted. That case requires such proof regardless of whether the treating physi-

cians were designated by the employer, as allowed by statute, or whether the physicians were selected by the Plaintiff.

> In *New Jersey Zinc Co. v. Cole*, 532 S.W.2d 246, 251 (Tenn.1975), Chief Justice Fones pointed out that,

>> (u)nlike negligence cases, liability for medical expenses in a workmen's compensation case are governed by the statute. T.C.A. § 50–1004 (now § 50–6–204) provides, inter alia, that the employer shall furnish to the employee such medical and surgical treatment, etc., '... as ordered by the attending physician ... as may be reasonably required ...'

> T.C.A. § 50–6–204(a)(1) grants an employer, upon request, the right to 'a complete medical report as to the claimed injury, its effect upon the employee, the medical treatment prescribed, an estimate of the duration of required hospitalization, if any, and an itemized statement of charges for medical services ...' The statute also provides that, if the employer supplies a group of physicians from which the employee may select a treating physician, absent exceptional circumstances, the employee must accept the proffered aid. Considering the employer's access to medical reports, hospital records and charges, and considering the claimant is bound to accept the medical attention provided by the employer, we think the employee should not bear the burden of establishing the necessity of medical treatment or the reasonableness of medical charges *when the employer has designated the physician or the employer's designate refers the claimant to other specialists.*" (Emphasis supplied)

As above noted, on the date the plaintiff was injured, he notified his employer who designated Dr. Boals as plaintiff's physician. Dr. Boals then referred the plaintiff to Dr. Barnes, the psychiatrist. Therefore, under the holding in the *Russell* case, the burden of proof was on the employer to establish that the medical treatment was not necessary or that medical

charges were unreasonable. No attempt was made by the employer to bear this onus. This issue is without merit.

In the next issue, the defendant/employer says that the trial court erred in awarding psychiatric treatment for one year from the date of the final judgment. He says that the treatment was not warranted because the plaintiff/employee had returned to working status and was working at the time of the trial with no apparent difficulty.

■ Dr. Barnes testified that he thought that the plaintiff should be followed over the next four or five years although not in depth over the entire period. He stated however that he thought that over the next year to eighteen months, the plaintiff needed to be followed closely. He thought that after that limited period, the visits could be spread until his life stabilized and his depression became less severe.

There was other testimony indicating a need for further psychiatric observation and possible treatment that we will not further detail. This evidence collectively provides a reasonable basis for the trial judge to require the employer to furnish psychiatric care for the additional year. This issue is without merit.

The plaintiff/employee makes issue that the appeal is frivolous, but he does not argue this issue. We do not think that the appeal is frivolous because the first issue requiring a construction of T.C.A. § 50–6–207(3)(C) presented a substantial question.

The judgment is affirmed except for the portion thereof that awards separate compensation for permanent partial disability to the body as a whole and the left arm. The case is remanded for the trial judge to evaluate disability to the body as a whole in accordance with this opinion.

Each party shall pay one-half of the cost of this appeal.

COOPER, C.J., and HARBISON, BROCK and DROWOTA, JJ., concur.