# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 5, 2002 Session

## JACKIE MARTIN v. LEAR CORPORATION

**Appeal from the Circuit Court for Hamblen County**
**No. 98-CV-303     Kindall Lawson, Judge**

---

**No. E2001-01002-SC-WCM-CV - Filed October 24, 2002**

---

In this workers' compensation case, we are called upon to determine whether the trial court may admit a form C-32 medical report obtained by the plaintiff from the defendant's "consulting expert," a physician who made a physical examination of the plaintiff. The defendant claims that the physician it hired to make an independent medical examination of the plaintiff is protected from compelled testimony under Tennessee Rule of Civil Procedure 26.02(4)(B). However, the Tennessee's Workers' Compensation Law, specifically Tennessee Code Annotated sections 50-6-204(f) and 50-6-235(c), clearly permits the admission of testimony, including a medical report form, of an examining physician paid for by the employer in a workers' compensation case. Therefore, we hold that, pursuant to Tennessee Code Annotated sections 50-6-204(f) and 50-6-235(c), the trial court did not err by admitting the physician's medical report.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Trial Court is Affirmed**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ. joined. E. RILEY ANDERSON, J., Not Participating.

Steven H. Trent and Jennifer P. Keller, Johnson City, Tennessee, for the appellant, Lear Corporation.

James M. Davis, Morristown, Tennessee, for the appellee, Jackie Martin.

## OPINION

### Factual Background

The plaintiff, Jackie Martin, worked as a seat back assembler for the defendant, Lear Corporation, located in Hamblen County, Tennessee, from November 9, 1989, until September 4, 1998. At the time of trial, Martin was fifty-seven years old. He is married, the father of two grown children, and a veteran of twenty-four years of military service in the United States Army. Martin served two tours of duty in Vietnam. As a result of his military service, he suffers from Post Traumatic Stress Disorder ("PTSD"), which was diagnosed in 1996. Martin's employment at Lear involved repetitive motion in which he lifted the back portion of seats at a production rate of 1,735

per day. On September 23, 1998, Martin filed a complaint seeking workers' compensation benefits, alleging that his physical injuries resulted from his work at Lear and that his PTSD was aggravated by those injuries.

At trial, the plaintiff testified that he began to experience pain in his right elbow and left shoulder in late 1996. In early 1997, Martin reported his injury to his supervisor, Don Shockley, and acquired arm supports from the nurse in the company clinic. Martin also began to see Dr. Randall Greer, a physician on the list of workers' compensation physicians provided by Lear. Greer treated Martin and referred Martin to physical therapy and to another doctor, Dr. Michael Bratton.

In the spring of 1998, Martin began to experience intense pain in both arms, constant inflammation of his elbows, swelling in his right elbow, numbness in his right hand, and a sore spot in the back of his neck. He again visited Dr. Greer, who referred Martin to a neurologist, Dr. Scott Bridges. Following his visit with Dr. Bridges, Martin notified the nurse and a safety officer at Lear that he had been diagnosed with carpal tunnel syndrome, tendinitis in both elbows, bursitis with tendinitis in both shoulders, a ruptured disc in his neck, and two narrowed discs in his neck.

On September 4, 1998, Martin underwent surgery for right carpal tunnel release, performed by Dr. John Ambrosia. Martin later had surgery on his right shoulder on June 15, 1999, performed by Dr. Bratton. On Lear's request, neither doctor gave Martin an impairment rating. Martin testified that, as a result of his employment with Lear, he now suffers from depression, sleeplessness, and constant, disabling pain that prevents him from performing many day-to-day activities.

On April 24, 2000, Lear filed a motion requesting the court to order an independent medical examination by a neurologist. Lear's motion was granted, and Dr. Steven Sanders performed the examination on August 28, 2000. On November 7, Lear notified Martin that Dr. Sanders was a consulting expert only, and that he was not expected to testify. Then, on December 5, Martin filed a notice that he would file Dr. Sanders' form C-32 medical report, obtained by Martin from Dr. Sanders, to be used as evidence under Tennessee Code Annotated section 50-6-235(c)(1). Lear objected, claiming that Tennessee Rule of Civil Procedure 26.02(4)(B) protects from discovery the opinion of a consulting expert who will not be called as a witness.

The trial court found in favor of Martin and admitted the C-32 report into evidence. Dr. Sanders' report agreed with the opinion of Martin's expert, Dr. Gutch, as they both found Martin to have a permanent impairment rating of 39%. Relying on the opinions of Drs. Ambrosia, Bratton, Sanders, and Gutch, and the opinion of Dr. Russell McKnight, a psychiatrist, the trial court found that Martin was permanently and totally disabled and awarded him workers' compensation benefits accordingly.[1]

---

[1]The trial court did not differentiate the effect of the various medical and psychiatric injuries on the plaintiff's vocational disability.

Before the Special Workers' Compensation Appeals Panel, Lear asserted that the trial court erred by admitting the consulting expert's report, by finding that Martin gave adequate notice to the employer, by finding that the work-related injuries aggravated Martin's psychological condition, and by awarding Martin permanent and total disability. The Panel affirmed the judgment of the trial court as to all issues except the trial court's finding that Martin's psychological condition was aggravated by his work-related injuries. However, the Panel found that the trial court's award of permanent and total disability is sufficiently supported by the plaintiff's physical injuries.

We granted Lear's motion for review and now affirm the trial court's judgment.

## Standard of Review

In workers' compensation cases, the standard of review is de novo upon the record, accompanied by a presumption of the correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2); Mannery v. Wal-Mart Distrib. Center, 69 S.W.3d 193, 196 (Tenn. 2002).

## Analysis
## Examining Physician's Report

Tennessee Code Annotated section 50-6-116 declares the Workers' Compensation statute to be remedial in nature, and directs that the statute "shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained." Tenn. Code Ann. § 50-6-116 (1999). "Accordingly, 'these laws should be rationally but liberally construed to promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage.'" See Watt v. Lumbermens Mut. Cas. Ins. Co., 62 S.W.3d 123, 128 (Tenn. 2001) (quoting Lindsey v. Smith & Johnson, Inc., 601 S.W.2d 923, 926 (Tenn.1980)).

This case involves the interaction between the Tennessee Rules of Civil Procedure and the Workers' Compensation statute. The Tennessee Rules of Civil Procedure apply to all civil actions in this state, see Tenn. R. Civ. P. 1 (2002); however, as this Court has previously held, "specific statutory provisions typically will be given force and effect over more general statutory provisions." Patterson v. Tennessee Dept. of Labor and Workforce Dev., 60 S.W.3d 60, 64 (Tenn. 2001); see also Five Star Express, Inc. v. Davis, 866 S.W.2d 944, 946 (Tenn.1993). Therefore, as to issues in workers' compensation cases, the Rules are subject to the more specific Workers' Compensation statute.

Relying upon Tennessee Rule of Civil Procedure 26.02(4)(B), the defendant argues that the trial court erred in allowing the plaintiff to introduce the defendant's examining physician's report at trial because the defendant designated the physician a consulting expert. Rule 26.02(4)(B) provides:

A party may not discover the identity of, facts known by, or opinions held by an expert who has been consulted by another party in anticipation of litigation or preparation for trial and who is not to be called as a witness at trial except as provided in Rule 35.02 or upon a showing that the party seeking discovery cannot obtain facts or opinions on the same subject by other means.

Tenn. R. Civ. P. 26.02(4)(B) (2002).

Plaintiff, however, contends that Tennessee Code Annotated section 50-6-204(f) controls in this case. Section 50-6-204(f) states,

Any physician whose services are furnished or paid for by the employer and who treats or makes or is present at any examination of an injured employee may be required to testify as to any knowledge acquired by such physician in the course of such treatment or examination as same relates to the injury or disability arising therefrom.

Tenn. Code Ann. § 50-6-204(f) (1999). Furthermore, Tennessee Code Annotated section 50-6-235(c) permits any party to use medical reports in lieu of depositions as evidence at trial.

(1) Any party may introduce direct testimony from a physician through a written medical report on a form established by the commissioner of labor and workforce development. The commissioner shall establish by rule the form for the report. All parties shall have the right to take the physician's deposition on cross examination concerning its contents . . ..

(2) The written medical report of a treating or examining physician shall be admissible at any stage of a workers' compensation claim in lieu of a deposition upon oral examination, if notice of intent to use the sworn statement is provided to the opposing party or counsel not less than twenty (20) days before the date of intended use . . ..

Tenn. Code Ann. § 50-6-235(c)(1) & (2) (1999).

We agree with the plaintiff. While Rule 26.06 protects most "consulting experts," the Legislature has made it clear that in workers' compensation cases, physicians hired by the employer who treat, make, or are present at physical examinations of workers' compensation plaintiffs "may be required to testify." Furthermore, section 50-6-235(c)(1) allows the physician's medical report to be introduced at trial in lieu of testimony. In this case, the requirements of section 50-6-204(f) have been satisfied: Lear, the employer, hired Dr. Sanders, a medical doctor, to perform an independent medical examination of the plaintiff, Jackie Martin. Martin obtained a form C-32 medical report from Dr. Sanders, and, on December 5, 2000, Martin filed a notice with the court that

he planned on using Dr. Sanders' medical report at trial. Trial was February 23, 2001, thus the plaintiff's notice was in compliance with section 50-6-235(c)(2).

Therefore, Lear's November 7, 2000 letter to Martin indicating that Dr. Sanders was to be a consulting expert has no impact on our analysis. The clear implication of the Workers' Compensation statute is that a physician furnished by the employer who "treats, makes, or is present" at a physical examination of the employee can never be deemed a consulting expert for the purpose of protecting that physician's report.

Lear has provided authority to support its argument that examining experts deemed consulting experts after examinations are protected from forced testimony. See, e.g. White v. Vanderbilt Univ., 21 S.W.3d 215, 224 (Tenn. Ct. App. 1999)(suggesting that a party could shield the findings of a doctor who had been classified as a consulting expert before being deposed), Durflinger v. Artiles, 727 F.2d 888 (10th Cir. 1984), Reeves v. Boyd & Sons, Inc., 654 N.E.2d 864 (Ind. Ct. App. 1995). Importantly, however, none of the cases on which Lear relies are workers' compensation cases. Therefore this authority is inapposite because Tennessee Code Annotated section 50-6-204(f) did not apply.

Additionally, Lear cites two unreported workers' compensation cases at the trial level that provide Rule 26.02 protection to consulting experts. One case, however, involved a vocational expert, which does not fall under section 50-6-204(f). In the other case, the trial court, which allowed the defendant to prevent its examining physician from testifying, was evidently not made aware of section 50-6-204(f). The trial court's order specifically notes that Tennessee's Workers' Compensation Law "seems not to have addressed the specific issue presented."

Lear, acknowledging the existence of Tennessee Code Annotated section 50-6-204(f), asks this Court to find the statute unconstitutional under a separation of powers argument, relying on State v. Mallard, 40 S.W.3d 473 (Tenn. 2001). In Mallard, we held that a particular criminal statute that conflicted with Rule of Evidence 404(b) was unconstitutional. Since the statute in question conflicted with a rule of evidence, this Court was concerned about undermining the judicial determination of logical and legal relevancy. See id. at 483. We recognized that the General Assembly can establish rules of evidence in furtherance of the substantive law, but its ability to enact rules for use in court must be confined to those areas appropriate to the exercise of that power. See id. at 481. We emphasized that only the Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state. See id. at 480-481. Thus, we concluded that the legislature has no constitutional authority to enact rules that strike at the heart of the court's exercise of judicial power. See id. at 483.

This case clearly is distinguishable from Mallard. First, the statute at issue in this case does not impermissibly conflict with Rule 26.02 because it merely limits the application of Rule 26.02 in certain circumstances — when an employer in a workers' compensation case hires a physician to treat, make, or be present at a physical examination of the employee. Employers are not precluded

from relying upon Rule 26.02 as to other experts who do not meet the strict requirements of the statute.

Second, as the defendant points out, Rule 26.02(4)(B) is grounded in public policy concerns. Without the protection of this rule, litigants would be reluctant to consult experts for fear that their efforts would prove counter-productive, in that any unfavorable findings could be used against them. Further, it would be unfair for one party to reap the benefits of the other party's efforts. However, public policy generally is set by the Legislature,[2] and, in particular, the Workers' Compensation Law is entirely a creature of statute. See, e.g., Crump v. B & P Const. Co., 703 S.W.2d 140, 144 (Tenn. 1986); Perry v. Transamerica Ins. Group, 703 S.W.2d 151, 154 (Tenn. Ct. App. 1985). As such, the Legislature is the appropriate body to set the policy that governs workers' compensation cases.

By enacting Tennessee Code Annotated section 50-6-204(f), the Legislature is advancing the remedial purpose of workers' compensation cases: that of securing benefits to those who fall within its coverage. The purpose of this provision in particular seems to be that the legislature did not want employers, with greater resources, to send injured employees to many physicians for physical examinations until the employer receives a favorable result. There is, however, no requirement of shared information or forced testimony with regard to the employer's use of non-physician experts or physicians who consult without examining the employee. Therefore, section 50-6-204(f) is not unconstitutional as the defendant contends. The Legislature has not wholly suspended Rule 26.02(4)(B)'s application. It has merely provided an alternative procedure in a limited and specific context — workers' compensation cases. Accordingly, we conclude that the trial court in this case did not err in allowing Martin to introduce into evidence Dr. Sanders' C-32 form.

## Total and Permanent Disability

The defendant asserts that there is not enough evidence to support the trial court's determination of total and permanent disability. We disagree. As stated earlier, two doctors found the plaintiff suffered a 39% permanent medical impairment. The plaintiff himself testified before the trial court as to his injuries and continuing disability, and there was evidence that the plaintiff's disability was caused by the plaintiff's work for the defendant. In addition, after reviewing the record, we are of the opinion that the Special Workers' Compensation Appeals Panel erred in concluding that Dr. McKnight's testimony was too speculative to support an award based on psychological injuries. In our view, the record does not preponderate against the trial court's finding that the work-related injuries aggravated the plaintiff's psychological problems. Therefore, we reject the Panel's finding on this issue and affirm the judgment of the trial court.

With respect to the notice issue raised by the defendant and addressed by the Special Workers' Compensation Appeals Panel, we agree with the Panel that "Beyond the oral notice given by the plaintiff to people authorized to receive notice, we find the written form filed by the plaintiff

---

[2]Van Tran v. State, 66 S.W.3d 790, 804 (Tenn. 2001) (stating that the legislature sets public policy).

with the defendant satisfies the requirement of written notice as to the physical injuries of the plaintiff."

## **Conclusion**

We affirm the judgment of the trial court, finding that the plaintiff suffered a compensable injury while employed by the defendant and that he is totally and permanently disabled. Costs of this appeal are taxed to the defendant, Lear Corporation.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE