**FILED**

**JUNE 6, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 11:07 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | |
|---|---|
| Kirk Sikora | ) Docket No.: 2016-04-0025 |
| Employee, | ) |
| v. | ) State File Number: 2125-2016 |
| Cassens Transport, Co. | ) |
| Employer, | ) Judge Robert Durham |
| And | ) |
| New Hampshire Ins. Co. | ) |
| Insurance Carrier. | ) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on May 20, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Kirk Sikora, on March 15, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015) to determine if the employer, Cassens Transport, Co., is obligated to pay for Mr. Sikora's emergency room treatment incurred on January 1, 2016.[1]

The dispositive issue is whether any injuries Mr. Sikora sustained during an assault on December 31, 2015, arose primarily out of and in the course and scope of his employment with Cassens.[2] A secondary issue is whether Mr. Sikora is entitled to reimbursement for emergency room treatment received on January 1, 2016. The Court finds the evidence submitted by Mr. Sikora is sufficient to establish he sustained an injury arising primarily out of and in the course and scope of his employment. The Court further finds Cassens authorized the emergency room treatment, thus creating the presumption that it was reasonable and necessary. As a result, Cassens shall pay this expense in accordance with fee schedule guidelines.

---

[1] At the hearing, Mr. Sikora stipulated that the only benefit he sought from the Expedited Hearing was reimbursement for the emergency room visit.

[2] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

## History of Claim

Mr. Sikora is a forty-nine-year-old resident of Smith County, Tennessee, who works as a truck driver for Cassens Transport, Co. (T.R. 1 at 1.) Mr. Sikora's testimony as to the events of December 31, 2015, and January 1, 2016, were essentially uncontested by Cassens. Mr. Sikora testified that on December 31, 2015, he drove from Cassens' terminal in Smyrna, Tennessee to Chicago, Illinois, where he picked up a load for his return trip to Tennessee. Given that he had already worked the maximum length of time allowed by federal regulations and Cassens' policy, Mr. Sikora stopped at a Best Western hotel in Lafayette, Indiana to take a mandatory ten-hour rest break. He testified Cassens paid for the expenses associated with the stay, and he had stayed there several times before.

Mr. Sikora checked in to the hotel at approximately 3:30 p.m. and went to bed around 8:00 p.m. At 10:30 p.m., Mr. Sikora was awakened by noise from a party down the hall from his room. After some time, he called to the front desk to complain but the noise continued unabated. Mr. Sikora got up from bed and slammed his door as loudly as he could to get the attention of the partygoers. The noise quieted, but after five minutes, someone knocked on his door. Mr. Sikora told the person to go away, and they did; however, fifteen minutes later, someone began pounding on his door. Mr. Sikora again demanded they leave him alone, but this time the pounding continued.

Mr. Sikora rose from bed and opened the door to face three men. He testified he could smell alcohol on their breath. One of the men asked him "what his problem was." Mr. Sikora told him he was a truck driver and needed to get some sleep since he would be leaving for work in a few hours, and he was not there to "party." One of the other men then grabbed him by the throat and pushed him back against the glass closet door next to the door of his room. Mr. Sikora told him to "get the f*** out of his face" but testified the man's grip became so tight that he momentarily passed out. He woke almost immediately to find himself on the closet floor surrounded by glass. The men were still outside his door. He told them he would have to call the police because of the damage done to the door. At that point, the men left.

Mr. Sikora called the police, but after a brief investigation, they left without arresting anyone. Mr. Sikora told them he did not need medical treatment at that time. The hotel moved him to another floor, and he slept for a few hours before waking to get in his truck. He testified that upon waking, he had difficulty breathing and could barely talk. After some time, he contacted the terminal and left a voicemail telling them he needed medical attention. When he got back to Smyrna, he texted his dispatcher, Jim Firkus, and told him he was back and needed medical attention. He asked if there was somewhere specific he was required to go. He testified Mr. Firkus called and told him he could seek medical attention anywhere.

2

After dropping off his truck, Mr. Sikora went to the emergency room at Stonecrest Medical Center. He underwent tests for his neck and knee and was released shortly thereafter.[3] Mr. Sikora returned to work and has not sought any additional medical treatment. He testified he is not currently experiencing any symptoms.

On cross-examination, Mr. Sikora conceded he did nothing to inform his alleged assailants that he was in any way connected to Cassens. He further testified he initiated contact with the parties by slamming his door. He also admitted he did not include any statement in his affidavit about the parties having alcohol on their breath.

Mr. Sikora filed a Petition for Benefit Determination seeking medical benefits on January 29, 2016. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on March 18, 2016. Mr. Miller filed an REH on March 15, 2016. The Court heard the matter on May 20, 2016.

At the Expedited Hearing, Mr. Sikora contended he was at the hotel as required by law and Cassens' policy; thus, he was in the course of employment at the time of the assault. He further contended his injuries arose primarily out of his employment in that the assault occurred due to a conflict between his need to sleep so he could drive the next day and the party occurring down the hall from his room. Cassens countered that while the injury may have occurred while Mr. Sikora was in the course of his employment, it did not arise from his employment given that the alleged assailants were not even aware Mr. Sikora worked for Cassens at the time of the assault.

### Findings of Fact and Conclusions of Law

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of

---

[3] The parties did not enter any actual medical records into evidence.

3

producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order to establish compensability, an employee must prove he sustained an injury "arising primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14)(A) (2015). *Johnson v. Wal-Mart Associates, Inc.*, No. 2014-06-0069, 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *11-12 (Tenn. Workers' Comp. App. Bd. July 2, 2015), addresses how the courts interpret this language:

> The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. By contrast, arising out of employment refers to causation. An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. Put another way, an injury arises out of employment when it "has a rational, causal connection to the work."

(Citations omitted). Mr. Sikora must provide sufficient evidence regarding the circumstances of his assault to show he is likely to prevail at a hearing on the merits with regard to both elements in order to prevail. Tenn. Code Ann. § 50-6-102(14)(A) (2015).

Similar to the employer in *Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 511 (Tenn. 2010),[4] Cassens did not focus its argument on whether Mr. Sikora was in the course of his employment, but instead disputed whether the injury "arose out of" his employment with Cassens. Nevertheless, the Court finds both federal law and Cassens' policy required Mr. Sikora to take a ten-hour rest break immediately after working the maximum time allowed. Furthermore, Cassens paid for his stay at the Best Western hotel in Lafayette, Indiana, and had done so several times in the past. The assault occurred during Mr. Sikora's mandatory rest break at the hotel. Therefore, the Court finds the

---

[4] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

assault occurred while Mr. Sikora was in a place his employment required him to be at a time he was required to be there. *See Johnson, supra,* at *11-12. Thus, the Court finds Mr. Sikora was in the course of his employment with Cassens at the time of the assault. *Id.*

With regard to arising out of employment, the Supreme Court has generally recognized three types of assaults that occur in the workplace:

> (1) assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment relationship.

*Padilla, supra,* at *511-12 (Tenn. 2010) (citations omitted); *see also Wait v. Travelers Indem. Co. of Ill.,* 240 S.W.3d 220, 227 (Tenn. 2007).

In this matter, Cassens argues Mr. Sikora's situation is similar to that of the employee in *Wait. Wait, supra,* at *223. Ms. Wait worked for her employer from her home. *Id.* While making lunch, she invited a man into her kitchen where he brutally assaulted her. *Id.* The assault had nothing to do with Ms. Wait's employment other than she happened to be working from home where the assault occurred. *Id.* Under those circumstances, the Court found Ms. Wait's injuries were the result of a "neutral force" that did not arise from her employment and declined to award her benefits. *Id.* at 227-28.

Cassens argues the Court should find the same to be true in Mr. Sikora's case since the assault occurred in a neutral location and the assailants were not even aware Mr. Sikora was a Cassens employee. Cassens contends that, as in the *Wait* case, the only connection between Mr. Sikora's injury and his employment with Cassens was that he was required to be at the hotel at the time of the assault. Cassens avers that, while that may be sufficient to meet the requirement that the injury be in the course of employment, it is not enough to establish the injury primarily arose out of employment. *See Id.*

However, the Court is not persuaded by Cassens' argument. In Mr. Sikora's case, he was in the midst of a mandatory break so he might be sufficiently rested to perform his job safely the next day. The party down the hall prevented him from obtaining this rest. Mr. Sikora attempted to call attention to this interruption, perhaps unwisely, by slamming his door very loudly. When he did so, the parties eventually confronted each other and Mr. Sikora told them he needed to rest because he was a truck driver and would be on the road in a few hours. At that point, he was physically attacked, sustaining the injuries that led to his emergency room visit the next day.

Therefore, unlike the employee in *Wait* where the assault had no connection to Ms. Wait's employment, the assault on Mr. Sikora originated from his mandatory rest period and his need for sleep so he could safely perform his job the next day. Certainly, it was in Cassens' best interests that he be able to sleep before getting behind the wheel of his truck. While Mr. Sikora may not have chosen the best option in seeking relief from the noise of the party, the Court nevertheless finds a sufficient causal connection to establish the assault and resulting injury arose out of his employment. *Johnson, supra,* at *11-12.

As a result, the Court finds Mr. Sikora provided sufficient evidence to establish he is likely to prevail at a hearing on the merits with regard to whether his injuries primarily arose out of and in the course of his employment with Cassens, thus rendering his injuries compensable. Tennessee Code Annotated section 50-6-102(14)(A) (2015).

With regard to the emergency room treatment, the undisputed evidence is that Mr. Sikora explicitly asked his dispatch manager, Jim Firkus, if he was required to seek medical care at a particular location and Mr. Firkus advised him to seek medical treatment wherever he could find it. Thus, Mr. Firkus authorized the treatment provided by Stonecrest Medical Center. Treatment requested and furnished by an authorized treating physician for work-related injuries is presumed to be medically necessary and reasonable. *See, Crump v. B &P Constr. Co.,* 703 S.W.2d 140, 145 (Tenn. 1986); *Russell v. Genesco, Inc.,* 651 S.W.2d 206, 211 (Tenn. 1983). Therefore, the Court finds Mr. Sikora provided sufficient evidence to establish he would prevail at trial on the issue of payment for treatment provided by Stonecrest Medical Center for injuries causally related to the assault on December 31, 2015. *Id.*

**IT IS, THEREFORE, ORDERED** as follows:

1. Cassens shall pay the emergency room bill for expenses incurred for the treatment of Mr. Sikora's injuries causally related to the assault of December 31, 2015, in accordance with fee schedule guidelines.

2. This matter is set for Initial Hearing/Status Conference on July 6, 2016, at 1:30 p.m. C.T.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after**

6

entry of this Order. **Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4.    For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED THIS THE 6th DAY OF JUNE, 2016.**

Robert V. Durham, Judge
**Court of Workers' Compensation Claims**

**Initial Hearing:**

An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: **You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it

with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Affidavit of Kirk Sikora;
2. Employee Worker's Comp Wage Calculation; and
3. Medical bill from Stonecrest Medical Center.

Technical Record:

1. Petition for Benefit Determination;
2. Request for Expedited Hearing; and
3. Dispute Certification Notice.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 6 <sup>th</sup> day of June, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Kirk Sikora | X | | X | 246 Meadow Green Lane, Apt. C Gordonsville, TN 38563 prazjsus@yahoo.com |
| Peter Rosen | | | X | prosen@levineorr.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov