# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### Submitted on Briefs November 16, 2009

## ALISIA ARIAS v. DURO STANDARD PRODUCTS COMPANY ET AL.

**Direct Appeal from the Chancery Court for Madison County**
**No. 65071      James F. Butler, Chancellor**

_____

**No. W2008-02772-SC-R3-WC - Filed January 22, 2010**

_____

The employee sought workers' compensation benefits, contending that she had developed occupational asthma as a result of exposure to dust in the workplace. The employee offered into evidence the written report of a physician who performed an independent medical evaluation of the employee at the request of the employee's attorney. The employer objected to the introduction of the report, contending that Tennessee Code Annotated section 50-6-235 is the exclusive method of introducing medical proof in workers' compensation cases and that this statute permits the employer to depose the expert whose report is offered into evidence. Overruling the objection, the trial court admitted the report into evidence pursuant to Tennessee Rule of Evidence 803(6) and awarded workers' compensation benefits to the employee based on the physician's report. The employer appealed. We conclude that the trial court erred by admitting the evaluating physician's report into evidence and that the remaining admissible evidence is insufficient to establish either causation or permanency. Accordingly, the judgment of the trial court awarding workers' compensation benefits is vacated, and the complaint is dismissed.

**Tenn. Code Ann. § 50-6-225(e) (2008) Appeal as of Right;**
**Judgment of the Chancery Court Reversed;**
**Case Remanded for Dismissal of the Complaint**

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

William F. Kendall and Hailey H. David, Jackson, Tennessee, for the appellants, Duro Standard Products Company and Federal Insurance Company.

David M. Hardee, Jackson, Tennessee, for the appellee, Alisia Arias.

**OPINION**

Factual and Procedural History

Plaintiff Alisia Arias began working for defendant Duro Standard Products (Duro Standard), a paper bag manufacturer, in April 2006. On June 7, 2006, a fan near Ms. Arias's work station malfunctioned and blew dust onto her body and face. Ms. Arias filed an action against Duro Standard and its workers' compensation insurer on November 26, 2007, seeking workers' compensation benefits for a pulmonary injury sustained as a result of the June 7 incident.

At a trial held on October 23, 2008, Ms. Arias testified that her throat became clogged on June 8, 2006, and that she sought medical treatment three times during the following week. She returned to work for two weeks during which time she participated in the cleaning of Duro Standard's facility by using compressed air to blow paper dust from manufacturing equipment. Ms. Arias wore a mask and used an inhaler while cleaning the equipment. Over the Fourth of July holiday, Ms. Arias "blacked out" during a memorial service and did not return to work. Ms. Arias consulted Dr. Gift Eze, a primary care physician, who referred her to a pulmonary specialist, Dr. Jeffrey McCartney.

Testifying by deposition, Dr. McCartney explained that he first examined Ms. Arias in August 2006 and continued as her treating physician until the time of trial. Dr. McCartney diagnosed Ms. Arias with mild asthma and prescribed Singulair, Albuterol, and Asmanex. He opined that her condition was pre-existing and was not caused by her exposure to dust at work. However, Dr. McCartney also testified that her exposure to dust at work on June 7, 2006, could have aggravated her pre-existing condition and triggered an asthma attack. Dr. McCartney recommended that Ms. Arias avoid "dust, fumes, chemical smoke, [and] toxins," but he stated that her condition should not limit her ability to work. Dr. McCartney did not offer an opinion concerning Ms. Arias's permanent impairment.

Dr. Grafton Thurman, a rheumatologist and pulmonary specialist, performed an independent medical evaluation of Ms. Arias on July 11, 2007, at the request of Ms. Arias's attorney. In his subsequent written report, Dr. Thurman opined that Ms. Arias's asthma was caused by her June 7, 2006 exposure to dust in the workplace, explaining, "Everything has been activated from an inactive, non-disease status to an active disease status from that exposure on that day." Dr. Thurman assigned eighteen percent permanent partial impairment to the body as a whole as a result of her workplace injury. The report was not in the form authorized by Tennessee Code Annotated section 50-6-235 (2008), commonly called a "C-32

report."[1]  After issuing his report, Dr. Thurman became disabled, and his medical practice was permanently closed.  Dr. Thurman was unable to give a deposition or testify at trial.

At trial, Ms. Arias sought to introduce Dr. Thurman's report into evidence pursuant to Tennessee Rule of Evidence 803(6), the hearsay exception for records of regularly conducted activity, often referred to as the business records exception.  To establish that the report satisfied the requirements of this hearsay exception, Ms. Arias offered the deposition testimony of Jennifer Aycock, who had worked as Dr. Thurman's medical assistant.  Ms. Aycock testified that Dr. Thurman was a licensed physician who specialized in pulmonary medicine, that he conducted independent medical examinations during the course of his business, that records of his reports were generated at or near the time of these examinations, and that the report of his evaluation of Ms. Arias was such a record.  Duro Standard objected to admission of the report, arguing that Tennessee Code Annotated section 50-6-235 provides the exclusive means of introducing medical opinion evidence in workers' compensation cases and that Ms. Arias had failed to comply with the statute.[2]  Duro Standard also argued that the medical report does not qualify as a business record that would be admissible under Rule 803(6).  The trial court overruled Duro Standard's objection and admitted the report pursuant to Tennessee Rule of Evidence 803(6) without explaining the basis for its ruling.

Thereafter, Duro Standard introduced Ms. Arias's medical records from Jackson-Madison County General Hospital without objection.  These medical records indicated that Ms. Arias had an active prescription for an Albuterol inhaler on July 13, 2003, and February 27, 2004, long before her exposure to dust at Duro Standard.  The February 27, 2004 medical record also listed asthma as an identified problem or risk.  At trial, Ms. Arias admitted that she had been prescribed an inhaler before June 2006.  She denied, however, that she used it regularly, and she could not recall why the medication had been prescribed or who had written the prescription.  Ms. Arias denied that she had been diagnosed with asthma prior to June 2006.

---

[1] If Dr. Thurman had presented his opinion in a C-32 Report, Duro Standard would have had ten days after receiving notice of Ms. Arias's intent to rely on the report to object to its admission.  Tenn. Code Ann. § 50-6-235(c)(2).  Furthermore, a C-32 Report may not be introduced into evidence unless the physician who authored the report is available to be deposed by the objecting party.  Carter v. Quality Outdoor Prods., Inc., No. W2009-00855-SC-R9-WC, __ S.W.3d __ (Tenn. 2010).

[2] In a Motion for Continuance filed on October 7, 2008, more than two weeks before the October 23, 2008 trial, Duro Standard stated that it would object to the introduction of Dr. Thurman's report at trial and that it did not waive any objections to the admissibility of Ms. Aycock's deposition.  Duro Standard asked for a continuance to allow Dr. McCartney to perform further tests on Ms. Arias.  The record is silent concerning the disposition of that motion.

Based on the foregoing proof, the trial court found that Ms. Arias's asthma was either caused or aggravated by her exposure to dust in the workplace in June and July 2006. The trial court awarded Ms. Arias thirty-six percent permanent partial disability to the body as a whole. Duro Standard appealed, contending that the trial court erred by admitting Dr. Thurman's report into evidence and by finding that Ms. Arias had sustained a permanent disability as a result of a compensable injury.

After oral argument before the Panel, this Court transferred Ms. Arias's appeal to the full Court for consideration. We vacate the judgment of the trial court and dismiss the complaint.

Analysis

I. Admission of Dr. Thurman's Report

This appeal requires us to determine whether Dr. Thurman's report was properly admitted into evidence pursuant to Tennessee Rule of Evidence 803(6), an exception to the hearsay rule. Duro Standard argues that Tennessee Code Annotated section 50-6-235, addressing the introduction of medical evidence in workers' compensation cases, provides the exclusive method of introducing Dr. Thurman's report. This issue of statutory construction is a question of law, which we review de novo. In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009); Gleaves v. Checker Cab Transit Corp., 15 S.W.3d 799, 802 (Tenn. 2000); Myint v. Allstate Ins. Co., 970 S.W.2d 920, 924 (Tenn. 1998). Our primary objective in construing statutes is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002).

We begin our analysis with section 50-6-235(c) of the Workers' Compensation Law, which provides:

(1) Any party may introduce direct testimony from a physician through a written medical report on a form established by the commissioner. The commissioner shall establish by rule the form for the report. All parties shall have the right to take the physician's deposition on cross examination concerning its contents. . . .

(2) The written medical report of a treating or examining physician shall be admissible at any stage of a workers' compensation claim in lieu of a deposition upon oral examination, if notice of intent to use the sworn statement is provided to the opposing party or counsel not less than twenty (20) days

-4-

before the date of intended use. If no objection is filed within ten (10) days of the receipt of the notice, the sworn statement shall be admissible as described in this subsection (c). In the event that a party does object, then the objecting party shall depose the physician within a reasonable period of time or the objection shall be deemed to be waived.

Duro Standard argues that parties in a workers' compensation action are obligated to comply with Tennessee Code Annotated section 50-6-235(c) before attempting to introduce medical proof and may not circumvent the requirements of that statute by relying on generally applicable rules of evidence to introduce such proof. Duro Standard argues that the trial court frustrated its statutory right to depose Dr. Thurman by allowing Ms. Arias to introduce the report pursuant to Tennessee Rule of Evidence 803(6).

Our reasoning in Martin v. Lear Corp., 90 S.W.3d 626 (Tenn. 2002), is instructive in determining the interplay between a rule of evidence or procedure and the Tennessee Workers' Compensation Law. In Martin, we were asked to determine the admissibility of a report of a physician who was consulted for an independent medical evaluation. Tennessee Rule of Civil Procedure 26.02(4) governs the discovery of opinions held by experts. Rule 26.02(4)(B) does not permit the discovery of the opinion of an expert witness who is consulted in preparation for trial but who will not be called as a witness at trial by the party procuring the expert's opinion.[3] On the other hand, Tennessee Code Annotated section 50-6-204(f) (Supp. 2009), governing workers' compensation cases, permits the discovery of opinions of physicians who are paid by employers and who treat or examine employees and requires those physicians to testify at trial. Although Rule 26.02 protects most "consulting experts," we concluded that the legislature determined that physicians who are hired by employers in workers' compensation cases may be required to testify. Thus, we concluded that Rule 26.02 was inconsistent with the more specific rule governing workers' compensation cases and held that the specific rule controlled.

In this case, however, Tennessee Rule of Evidence 803(6) and section 50-6-235(c) are not inconsistent. Instead, section 50-6-235(c) and Rule 803(6) simply provide alternative means of introducing medical evidence in workers' compensation cases. The prerequisites for admission under the statute differ from those provided in the evidentiary rule, but neither

_____

[3] Tennessee Rule of Civil Procedure 26.02(4)(B) states,

A party may not discover the identity of, facts known by, or opinions held by an expert who has been consulted by another party in anticipation of litigation or preparation for trial and who is not to be called as a witness at trial except as provided in Rule 35.02 or upon a showing that the party seeking discovery cannot obtain facts or opinions on the same subject by other means.

the statute nor the rule is the exclusive method of admissibility. To conclude otherwise would negate another portion of the workers' compensation statute specifically providing that "the Tennessee Rules of Evidence apply to all civil actions" seeking workers' compensation benefits. Tenn. Code Ann. § 50-6-225(b) (2008). Whenever possible, courts should construe component parts of a statute "so that the parts are consistent and reasonable." See State v. Alford, 970 S.W.2d 944, 946 (Tenn. 1998).

We are mindful of the holding of the Special Workers' Compensation Appeals Panel in Baker v. Sally Beauty Supply, No. 02S01-9709-CH-00078, 1998 WL 742386 (Tenn. Workers' Comp. Panel Oct. 26, 1998), which reached the opposite conclusion. In Baker, the Panel considered whether the trial court erred by admitting into evidence reports from an orthopedic surgeon and physical therapists pursuant to Rule 803(6) as records of regularly conducted activity. Id. at *1. The employer in Baker failed to provide notice of its intent to introduce the reports as required by section 50-6-235(c), and the employee had no opportunity to object to the admission of the documents or to take the surgeon's deposition. The Panel noted that there was "considerable confusion" in the preparation of the records that may have kept them from being properly admitted pursuant to Rule 803(6) but did not reach that issue in light of its holding. Id. at *1 n.1. The Panel in Baker instead concluded that Tennessee Code Annotated section 50-6-235(c) provides the exclusive means of introducing medical evidence in workers' compensation cases. The Panel reasoned that a conflict existed between Rule 803(6), which it described as a general statute, and section 50-6-235(c), which it described as a specific statute. The Baker Panel applied the familiar rule that "[w]here there is a conflict between a specific statute and a general statute, the specific statute will be given effect." Id. at *2.

We disagree with the Panel's holding. We conclude that the legislature plainly intended the Rules of Evidence to complement the Workers' Compensation Law. We see no reason to hold that a conflict exists requiring us to choose one means of introducing medical records over another. Tennessee Code Annotated section 50-6-235 does not preclude the introduction of Dr. Thurman's report so long as the report satisfies the requirements for admission provided in Tennessee Rule of Evidence 803(6). To the extent Baker held otherwise, it is overruled.

## II. Business Record Exception

We next consider whether the trial court erred by admitting Dr. Thurman's report pursuant to Tennessee Rule of Evidence 803(6). The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay evidence is not admissible except as provided by [the Tennessee Rules of

Evidence] or otherwise by law." Tenn. R. Evid. 802. Dr. Thurman's report clearly constitutes hearsay evidence that is not admissible unless it satisfies an exception provided in the Rules of Evidence or some other law.

The trial court allowed Ms. Arias to introduce the report into evidence pursuant to Rule 803(6). The determination of whether a hearsay statement is admissible through an exception to the hearsay rule is left to the sound discretion of the trial court. State v. Stout, 46 S.W.3d 689, 697 (Tenn. 2001); State v. Stinnett, 958 S.W.2d 329, 331 (Tenn. 1997). We will not reverse the ruling of the trial court absent a showing that this discretion has been abused. Stout, 46 S.W.3d at 697.

Rule 803(6) defines the prerequisites for admission as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . , unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

The foregoing exception "rests on the premise that records regularly kept in the normal course of business are inherently trustworthy and reliable." Alexander v. Inman, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995), perm. app. denied, (Tenn. July 3, 1995). The purpose of this hearsay exception is to permit the use of inherently trustworthy business records at trial by eliminating the expense and inconvenience that would result from requiring the testimony of everyone involved in the preparation and maintenance of such records. Id. The rule is modeled after the Uniform Business Records as Evidence Act, Tennessee Code Annotated section 24-7-111 (1980), repealed by 1991 Tenn. Pub. Acts 273. "To avoid interpretive mistakes . . . , the proposal specifically requires that the declarant have 'a business duty to record or transmit' information. Without that duty, a business record would lack the trustworthiness necessary to carve out a hearsay exception." Tenn. R. Evid. 803(6) advisory comm'n cmt.

The Tennessee Court of Appeals has explained that Rule 803(6) includes the following five criteria that must be satisfied for a document to be admissible under the business records exception:

1. The document must be made at or near the time of the event recorded;

2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;

3. The person providing the information in the document must be under a business duty to record or transmit the information;

4. The business involved must have a regular practice of making such documents; and

5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness.

Alexander, 903 S.W.2d at 700.

Having considered Dr. Thurman's report, we conclude that the trial court erred by admitting the report pursuant to Rule 803(6). Dr. Thurman generated this report for the purpose of litigation in the course of his "business" as an evaluating expert. He was not a treating physician, and his opinion was sought solely for the purpose of establishing causation and impairment in this workers' compensation litigation. "An extraordinary report prepared for an irregular purpose, particularly when prepared with litigation in mind, may not be made in the regular course of business and may be inadmissible as a business record under Rule 803(6)." Neil P. Cohen, et al., Tennessee Law of Evidence § 8.11[6] at p. 8-113 (5th ed. 2005); see State v. Goldston, 29 S.W.3d 537, 542 (Tenn. Crim. App. 1999) ("Hospital records kept daily for medical purposes and not prepared for the purpose of litigation are typically deemed reliable.").

This view is consistent with the language of Rule 803(6) declaring that business records should not be admitted if the "circumstances of [their] preparation indicate lack of trustworthiness." This view is also consistent with the reason for the rule excluding hearsay evidence, "that the trier of fact will not be able to hear cross-examination of the declarant." Cohen, et al., Tennessee Law of Evidence § 8.01[3][a] at 8-11. Finally, this view is consistent with the rationale supporting recognition of the various exceptions to the hearsay rule—to admit only hearsay evidence that exhibits inherent trustworthiness and indicia of reliability. See id. § 8.01[3][c] at 8-12. Were we to hold that Dr. Thurman's medical report

meets the requirements of Rule 803(6), litigants would be free to present expert opinion on any subject by merely introducing an expert's written report through a records custodian without ever subjecting the expert to cross examination. We decline to so broadly interpret the exception provided in Rule 803(6).

## III. Causation and Permanency

Having concluded that Dr. Thurman's report was not properly admitted into evidence, we must examine the record to determine if the remaining evidence is sufficient to support the trial court's award of workers' compensation benefits. This Court reviews a trial court's findings of fact in a workers' compensation case de novo with a presumption of correctness "unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(e)(2) (2008). When a trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, we must extend considerable deference to the trial court's factual findings. Whirlpool Corp. v. Nakhoneinh, 69 S.W.3d 164, 167 (Tenn. 2002). We extend no deference to the trial court's findings when reviewing documentary evidence such as depositions, however. Id.

The records of Jackson-Madison County General Hospital list Albuterol as a current medication for Ms. Arias in 2003 and 2004. Ms. Arias confirmed the accuracy of these records at trial. Dr. McCartney testified that Albuterol is prescribed solely for treatment of asthma. Ms. Arias's medical records therefore are consistent with a diagnosis of asthma and treatment for that condition prior to the events of June and July 2006. Dr. McCartney also testified unequivocally that Ms. Arias's asthma was not caused by dust exposure at work, although he testified that the dust exposure at Duro Standard may have aggravated Ms. Arias's pre-existing asthmatic condition by triggering an asthma attack. Dr. McCartney was unwilling to assign any permanent impairment for Ms. Arias's condition without regard to whether such impairment was pre-existing or work-related.

The trial court also heard testimony from Ms. Arias that her condition had permanently worsened. Although that testimony was admissible, McIlvain v. Russell Stover Candies, Inc., 996 S.W.2d 179, 183 (Tenn. 1999), causation and permanency must be proven by expert medical testimony except in the most obvious cases. Thomas v. Aetna Life & Cas. Co., 812 S.W.2d 278, 283 (Tenn. 1991). This is not such an "obvious" case in which expert testimony is unnecessary. Without reference to Dr. Thurman's report, the evidence preponderates against the trial court's finding that Ms. Arias sustained permanent impairment

or disability as a result of her exposure to dust while working for Duro Standard in June and July 2006. We therefore reverse the judgment of the trial court and dismiss the complaint.[4]

Conclusion

The trial court erred in admitting Dr. Thurman's report through the testimony of his medical assistant. Although Tennessee Code Annotated section 50-6-235 is not the exclusive means of introducing medical testimony in workers' compensation cases, the medical evidence sought to be introduced in this case was hearsay and did not meet the requirements of Tennessee Rule of Evidence 803(6). The remaining admissible evidence is insufficient to establish causation or permanency. Accordingly, the trial court's judgment awarding Ms. Arias workers' compensation benefits is vacated, and the complaint is dismissed. Costs are assessed against the appellee, Alisia Arias, for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE

---

[4] As in other cases when an award to an employee is based primarily on inadmissible evidence, we must dismiss the complaint rather than remand for a new trial. See, e.g., Brown v. United Parcel Serv., Inc., No. M2007-00343-WC-R3-WC, 2008 WL 902971, at *5, 10 (Tenn. Workers' Comp. Panel Apr. 1, 2008) (dismissing the complaint after excluding erroneously admitted evidence from consideration of whether causation was shown by the evidence); Brown v. Nat'l Cash Register Co., No. 03S01-9501-CV-00002, 1995 WL 688885, at *6 (Tenn. Workers' Comp. Panel Nov. 21, 1995) (reversing the award and dismissing the complaint because necessary supporting evidence was erroneously admitted).