IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 13, 2010 Session

## SHERRY C. SLOAN v. WILLIAM CHADWICK POFF

**Appeal from the Juvenile Court for Davidson County**
**No. 2007-5187; 2007-5550; 2009-4616      Betty K. Adams Green, Judge**

**No. M2009-01839-COA-R3-JV - Filed March 29, 2011**

The Juvenile Court found the mother in criminal contempt for violating two orders. The first order governed the manner of the mother's communications with her son's father, and the second order governed the father's right to visit with the child on specific dates. The Juvenile Court sentenced the mother to the Davidson County workhouse for ten days for violating the earlier order, but suspended the sentence for so long as the mother continued to comply with orders. The court fined the mother $50 for violating the second order. On appeal, the mother challenged: the sufficiency of the evidence supporting both findings of contempt; an evidentiary ruling; the suspension of her sentence; the appointment of a guardian ad litem for the child; and the trial court's recusal without request. We affirm the Juvenile Court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Connie Reguli, Brentwood, Tennessee, for the appellant, Sherry Sloan.

William Chadwick Poff, appellee, did not file a brief.

### OPINION

At issue in this appeal are two orders of criminal contempt entered by the Davidson County Juvenile Court against the Appellant, Sherry C. Sloan ("Mother"). Both contempt proceedings were initiated by the Appellee, William Chadwick Poff ("Father").

Mother and Father, who were not married, are the parents of a child born in July 2007. The parents have had a contentious relationship from at least October 2008 through the present. In this opinion we set forth only those facts that are relevant to the orders for contempt that are at issue in this appeal.

## I. ORDER DATED JANUARY 7, 2009

On October 1, 2008, the Juvenile Court held a hearing to address particular issues regarding Father and Mother's son, who was just fifteen months old at the time. Mother and Father had complaints regarding their communications with each other, and the court entered an Interim Order dated October 14, 2008 in which it wrote, in pertinent part:

> The order of protection now in effect against Mr. Poff is lifted to permit certain communication between him and Ms. Sloan, for the sole purpose of addressing issues related to their son. Preferably, such communications will be by e-mail or by telephone. The court suggests that each party save all e-mails to and from the other party. The court further suggests that each party purchase a recording device with which to record his or her conversations with the other party. Any telephone calls will be reasonable as to time, frequency, and duration.

Then, on January 7, 2009, the Juvenile Court entered an Order which stated in relevant part:

> The Court further finds and cautions the parties that they are to continue to communicate with one another as outlined in the interim Order by email or telephone and that suggested provision of the interim Order is adopted as a final order.

On July 8, 2009, Father filed a petition with the Juvenile Court charging Mother with willful contempt of the court's order. Specifically, Father alleged Mother left 32 separate voice-mail messages on his telephone within a 2-month time frame, and that on one day Mother left eight separate messages. According to Father, none of these messages concerned issues related to their son. In addition, Father alleged Mother showered him with unwanted gifts in December 2008 and that she gave him twelve valentine cards on February 13, 2009, all in violation of the court's January 7, 2009 Order.

The court held a hearing on Father's contempt petition on July 29, 2009. During the hearing, the court heard testimony from the parties and listened to Father's tape recorded messages from Mother. The parties also testified about an incident that occurred late one

night when the child was with Father and fell out of his crib. Father took the child to the emergency room the following morning after the child vomited, and apparently the child was given some medicine to control the vomiting so that a CT scan could be taken. When Mother learned what type of medicine Father allowed the doctors to give the child, she became upset and alleged Father should not have permitted their child to be given that type of medicine because she had suffered a reaction to that medicine when she was pregnant with the child.

In its order dated August 13, 2009, the Juvenile Court wrote:

> The Court, further, is of the opinion and finds that Ms. Sloan giving Mr. Poff twelve (12) valentine cards on February 13, 2009, did not rise to the level of criminal contempt in that Mr. Poff had sent Ms. Sloan a card from the child on Mother's Day; that Ms. Sloan giving Mr. Poff several Christmas gifts in December of 2008, did not rise to the level of criminal contempt in that Ms. Sloan testified that the many gifts were from the child; that the Court listened to a tape recording of a May 30, 2009, telephone message left by Ms. Sloan on Mr. Poff's answering machine; that the May 30, 2009, telephone message lasted for more than five minutes; that the May 30, 2009, telephone message was not about the parties' child; that the May 30, 2009, telephone message was not reasonable as to duration; that the proof clearly shows that Ms. Sloan leaving the May 30, 2009, telephone message left on Mr. Poff's answering machine was beyond a reasonable doubt a willful violation of this Court's orders; that Ms. Sloan should be found to be in contempt of this Court's orders and be sentenced to ten (10) days in the Davidson County workhouse but that said sentence should be suspended for so long as Ms. Sloan obeys this Court's orders . . . .

## II. ORDER DATED JULY 30, 2009

On July 30, 2009, a Magistrate of the Juvenile Court held a hearing regarding Father's visitation with his son. The court granted Father three hours visitation at the Exchange Club to take place on August 2, August 8, and August 15, 2009. Mother was directed to "participate in intake procedures as required by Exchange Club."

Father exercised his visitation on August 2, but he was unable to exercise his visitation rights or see his son on August 8. On August 6, Father had returned to the Juvenile Court and obtained an amendment to the July 30 Order. The court wrote in this amendment: "The father's family shall be allowed to attend the entire visitation between the father and

the minor child."[1]

Father appeared at the Exchange Club as planned on August 8, along with his mother, his fiancée, his fiancée's mother, his fiancée's father, and his fiancée's father's companion. When Mother learned Father had brought five additional people to visit with the child, Mother objected and refused to allow the visitation to go forward. Father testified he offered to visit with the child by himself, but Mother rejected this offer and instead left the Exchange Club with her child. As a result, the court-ordered visitation did not take place on August 8.

Father then filed a petition for contempt on August 10, 2009, in which he asked the Juvenile Court to hold Mother in criminal contempt for willfully violating the July 30 Order granting Father visitation with his son on August 8. The court held a hearing on August 20 and concluded Mother was in criminal contempt:

> After listening to all of the proof, I do find quite frankly, Ms. Sloan, that you are in contempt by not making [your son] available for visitation on August 8. I do find the proof is such that it carries beyond a reasonable doubt that you knew you were required to make [your child] available.
>
> The business record admitted by the Exchange Club is certainly instructive to the Court about what happened on the 8th. I do believe that you were given an opportunity for Mr. Poff to just visit on his own and that could have cured your concern, your confusion about who was allowed and not allowed. Mr. Poff was not allowed to see [his child] at all.
>
> Because of that I do find you in criminal contempt. Now, criminal contempt has a potential penalty of up to ten days in jail and/or a $50 fine. In looking at what is the appropriate sentence if you will, the Court is taking into consideration the fact that you were presented with a copy of the order on the August 8th visitation. I do take your attorney at his word that he did not see that order of August 6th even though I do believe Mr. Thompson made every attempt to include him in that and get him before the Court because when we have such short time periods, unfortunately folks can't always connect up.

---

[1]Father's attorney allegedly attempted to contact Mother's attorney prior to the hearing on August 6 to inform him of the hearing, but was unsuccessful in his attempts. Father's attorney stated he then sent a copy of the amendment to Mother's attorney following the hearing, but Mother's attorney was out of the office and did not receive the amendment until after August 8.

. . . . .

And the Court cannot be clear enough with you, Ms. Sloan, that if we have some other visitation orders going forward, I expect both parties to follow them. I'll try to dot every "I" and cross every "T" so there is no confusion. But because of the way the August 6th order clarifying the family situation came down, your punishment for contempt shall be a $50 fine payable to the Court.

In its Order entered August 24, 2009, the court wrote:

[T]he Court is of the opinion and finds that on August 8, 2009, Mr. Poff was to exercise court ordered visitation with his son at the Exchange Club; that Ms. Sloan had knowledge of the order granting Mr. Poff visitation at the Exchange Club on August 8, 2009; that at the appointed time for the visitation, Mr. Poff appeared at the Exchange Club to exercise his visitation; that at the appointed time for the visitation, Ms. Sloan, without just cause, refused to allow the child to participate in the visitation and, in fact, removed the child from the Exchange Club without allowing the visitation; that Ms. Sloan's action in preventing the visitation is a violation of this Court's order beyond a reasonable doubt and thus, is guilty of criminal contempt of this Court's orders; and that Ms. Sloan be and hereby is assessed a fine of fifty dollars ($50.00) for her contemptuous actions.

### III. ISSUES RAISED ON APPEAL

Mother has appealed both orders of contempt. She claims (1) the evidence was insufficient to support either Order of contempt; (2) the court erred in admitting into evidence the records from the Exchange Club; (3) the court erred in suspending her ten-day sentence to the Davidson County workhouse; and (4) the court erred in appointing a guardian ad litem and recusing herself during the contempt hearing. We will address each issue in turn.

### IV. CRIMINAL CONTEMPT

Tennessee Code Annotated §16-1-103 provides: "For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." The courts are specifically empowered to inflict punishments for contempts of court for the "willful disobedience or resistance of any . . . party . . . to any lawful writ, process, order, rule, decree, or command of such courts . . . ." Tenn. Code Ann. §29-9-102(3). A court may punish a party for contempt by a fine of $50, imprisonment up to ten days, or both.

Tenn. Code Ann. §29-9-103.

Criminal contempt actions "preserve the power and vindicate the dignity of the court." *Stream v. Stream*, 1992 WL 184771, at *1 (Tenn. Ct. App. 1992). Criminal contempt sanctions are imposed as punishment for not adhering to a court's order. *Long v. McAllister-Long*, 221 S.W.3d 1, 12-13 (Tenn. Ct. App. 2006). Before a court can hold an individual in contempt for violating an order, the order must be found to be specific and unambiguous. *In re Sydney T.C.H.*, 2010 WL 1254349, at *5 (Tenn. Ct. App. 2010) (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 355 (Tenn. 2008). Unlike civil contempt, an individual imprisoned for criminal contempt cannot win his or her freedom by complying with the court's order. *Long*, 221 S.W.3d at 13 (citing *Robinson v. Fulliton*, 140 S.W.3d 304, 310 (Tenn. Ct. App. 2003)).

The Tennessee Supreme Court has explained that an act of contempt is a "wilful or intentional act that offends the court and its administration of justice." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). A court must find a party's disobedience to be willful before it can find the party in contempt. *Id*. at 79. An individual charged with criminal contempt is presumed to be innocent and may not be found to be in criminal contempt without proof beyond a reasonable doubt that he or she has willfully failed to comply with a court's order. *Long*, 221 S.W.3d at 13.

On appeal, however, "[i]ndividuals convicted of criminal contempt lose their presumption of innocence and bear the burden of overcoming their presumption of guilt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964) and *Nuclear Fuel Servs. v. Local No. 3-677, Oil Chem., & Atomic Workers Int'l Union*, 719 S.W.2d 550, 552 (Tenn. Crim. App. 1986)). "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen*, 874 S.W.2d at 53; Rule of App. Pro. 13(e).

## V. SUFFICIENCY OF THE EVIDENCE TO SUPPORT CRIMINAL CONTEMPT FINDINGS

With regard to the January 7, 2009 Order, Mother asserts the tape recording of the phone message she left on May 30, 2009 was not preserved for appeal and that it therefore cannot form the basis for the court's finding of contempt. She also complains the trial court was not specific enough in the order for her to know what behavior was proscribed.

In the Interim Order dated October 14, 2008, the Juvenile Court lifted the order of

protection that was in effect at the time "to permit certain communication between [Poff] and Ms. Sloan, for the sole purpose of addressing issues related to their son." The court was clear and unequivocal that "[a]ny telephone calls will be reasonable as to time, frequency, and duration." The court expressly adopted this language from the Interim Order into the final order dated January 7, 2009. Moreover, the record shows that the tape recorded message was played in open court, and both Father and Mother testified about the recording. There is no dispute that the message was over five and a half minutes long, and that the message was not about the child or his well-being.[2]

The Juvenile Court concluded beyond a reasonable doubt that Mother had willfully violated its January 7, 2009 Order. Mother does not question the court's conclusions that her May 30, 2009 phone message was not about the parties' child or that the message was not reasonable as to duration. We find the court's order was specific and unambiguous as to how Mother was required to communicate with Father. We further find she has failed to overcome her presumption of guilt on appeal and hold that the evidence in the record supports the Juvenile Court's finding beyond a reasonable doubt that Mother was in contempt of its January 7, 2009 Order.

With regard to the Order dated July 30, 2009, Mother contends the evidence was insufficient to show her behavior was a willful violation of the order. We find this argument without merit. The July 30 Order was clear and unequivocal that Father was supposed to have a three-hour visit with his son on August 8. Mother's concern over the number of other people Father brought with him may have been reasonable. However, the testimony and other evidence introduced during the hearing showed that Father offered to meet with his son on his own, without any of his family members present. Mother rejected this option, and decided to leave with her son, fully aware that by doing so she was violating the court's order that Father visit with the child on that day.

Based on the evidence presented at the hearing, the Juvenile Court concluded beyond a reasonable doubt that Mother had willfully violated its July 30, 2009 Order. Mother has failed to overcome her presumption of guilt on appeal to show how the evidence is insufficient to prove her violation of the court's July 30, 2009 order was willful.

Therefore, we find that the evidence is sufficient to support both criminal contempt findings by the Juvenile Court and affirm the Juvenile Court's conclusions that Mother

---

[2]In the absence of a transcript of the tape recordings, or other suitable recordation of the content of the phone message being preserved in the appellate record, we must presume that, if it had been included, it would have supported the trial court's findings. *Williams v. Williams*, 286 S.W.3d 290, 297 (Tenn. Ct. App. 2008).

willfully violated both the January 7, 2009 Order and the July 30, 2009 Order.

## VI. THE EXCHANGE CLUB'S BUSINESS RECORDS

Mother next argues the Juvenile Court erred during its hearing on August 20, 2009, when it admitted into evidence the Exchange Club's record dated August 8, 2009. This document is relevant because it contained the following:

> Supervisor . . . gave the [Custodial Parent] the option of abiding by the court order and continuing with the visit or canceling the visit. [Custodial Parent] chose to cancel the visit. When this was communicated with the [Visiting Parent] he considered to visiting with child without family members; however, [Custodial Parent] refused that proposition and left with child.

Mother argues the document should not have been admitted because it contained notes and opinions of a third party who was not present for cross-examination, and also because it was not certified by an affidavit as required by Rule 803(6). She also suggests the document was created with litigation in mind, and for that reason should not have been admitted as a business record.

The Tennessee Rules of Evidence define "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). A "statement" is defined as an oral or written assertion. Tenn. R. Evid. 801(a). The record from The Exchange Club thus meets the definition of hearsay and is inadmissible absent an exception from the hearsay rule. Tenn. R. Evid. 802.

The Tennessee Rules of Evidence indicate that records of regularly conducted business activities constitute an exception to the hearsay rule. Rule 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph

includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

The basis for Rule 803(6) is that "records regularly kept in the normal course of business are inherently trustworthy and reliable." *Arias v. Duro Standard Products Co.,* 303 S.W.3d 256, 262 (Tenn. 2010) (quoting *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995), *perm. app. denied*, (Tenn. July 3, 1995)). This hearsay rule permits a trial court to rely on inherently trustworthy business records by eliminating the expense and inconvenience that would result from requiring everyone involved in the preparation and maintenance of such records to testify. *Arias*, 303 S.W.3d at 262 (citing *Alexander*, 903 S.W.2d at 700).

This court has explained that a party interested in introducing a business record as an exception to the hearsay rule must satisfy five criteria:

1. The document must be made at or near the time of the event recorded;

2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;

3. The person providing the information in the document must be under a business duty to record or transmit the information;

4. The business involved must have a regular practice of making such documents; and

5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness.

*Arias*, 303 S.W.3d at 263 (quoting *Alexander*, 903 S.W.2d at 700).

A trial court has discretion to determine whether a statement qualifies as an exception to the hearsay rule and can be admitted to prove the truth of the matter asserted in the statement. *Arias*, 303 S.W.3d at 262 (citing *State v. Stout*, 46 S.W.3d 689, 697 (Tenn. 2001) and *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997)). An appellate court will not reverse the trial court's determination unless a party can show the trial court abused its discretion. *Arias*, 303 S.W.3d at 262 (citing *Stout*, 46 S.W.3d at 697). A trial court will be found to have abused its discretion "when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citation omitted).

The transcript from the hearing on August 20 shows that Angela LeQuire testified at the hearing and that she was the program manager for supervised visitation and for safe exchanges at The Exchange Club Family Center. Ms. LeQuire testified she was familiar with The Exchange Club's recordkeeping procedures and that the information contained in the document offered into evidence was recorded by a person with knowledge of what transpired on August 8. She also testified that the person who recorded the information had the duty to record the information and that such documents are kept in the regular course of business at The Exchange Club. The record marked as an exhibit and introduced as a business record was dated August 8, 2009. Ms. LeQuire testified:

> That's part of our - - our process of the supervised visits is that for every visit, there is a monitored note. For every exchange, there is a monitored note.

Contrary to Mother's argument, there was no evidence in the record that The Exchange Club's document was prepared for an irregular purpose, such as litigation. *See State v. Dean*, 76 S.W.3d 352, 365 (Tenn. Crim. App. 2001) (document created for an irregular purpose, such as litigation, may not be made in the regular course of business and may be inadmissible as a business record under Rule 803(6)). Moreover, Mother's argument that the document should not have been admitted without an affidavit has no merit. The express language of Rule 803(6) is clear that a business record need not be certified by an affidavit in accordance with Rule 902(11) if a qualified witness satisfies the criteria set forth in the rule. Finally, Mother's contention that the individual who created the document should have been required to testify so that she could be cross-examined is not well-founded. As the Tennessee Supreme Court explained in *Arias*, one of the purposes of the business records exception to the hearsay rule is to avoid the necessity of requiring the individual who created the record to testify about what she wrote in the report. *Arias*, 303 S.W.3d at 262. Additionally, we note Mother could have secured the attendance of the author to testify at the hearing.

The Juvenile Court determined Ms. LeQuire was qualified to testify about the document and the practices of maintaining such documents at The Exchange Club. Further, the court determined the document satisfied the requirements of Rule 803(6) and could be admitted as an exception to the hearsay rule as a record of regularly conducted activity. Mother has failed to convince us that the Juvenile Court abused its discretion in admitting the document as a business record. Therefore, based on the document and the evidence introduced at the hearing, we affirm the Juvenile Court's admission of The Exchange Club's document as a business record in accordance with Tennessee Rule of Evidence 803(6).[3]

---

[3]Despite Mother's complaint that the person who created the record wrote that Mother was "argumentative" and "capricious," there is no indication the Juvenile Court relied on these characterizations

## VII. SUSPENDING CRIMINAL CONTEMPT SENTENCE

Mother next argues the Juvenile Court erred when it found her in criminal contempt of its January 7, 2009 Order and suspended her incarceration. The court wrote in its Order dated August 13, 2009:

> [T]he proof clearly shows that Mother leaving the May 30, 2009, telephone message left on Father's answering machine [sic] was beyond a reasonable doubt a willful violation of this Court's orders; that Mother should be found to be in contempt of this Court's orders and be sentenced to ten (10) days in the Davidson County workhouse but that said sentence should be suspended for so long as Mother obeys this Court's orders . . . .

While ordinarily one might assume that not being required to serve a sentence was preferable to incarceration, Mother's argument is that she should have been placed on probation and only be required to obey the court's orders for ten days. The basis for Mother's argument is found in Tennessee Code Annotated §40-35-303(c)(1):

> If the court determines that a period of probation is appropriate, the court shall sentence the defendant to a specific sentence but shall suspend the execution of all or part of the sentence and place the defendant on supervised or unsupervised probation either immediately or after a period of confinement for a period of time no less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense.

Mother argues that since the criminal contempt statute prevents a court from incarcerating an individual for more than ten days, *see* Tenn. Code Ann. §29-9-103, section 40-35-303(c)(1) precludes a court from suspending the sentence for longer than ten days because ten days is the "statutory maximum time for the class of the conviction offense."

Mother's argument would be persuasive if criminal contempt constituted a violation of the criminal law and if a suspension of a criminal contempt sentence constituted "probation" as that term is used in Tenn. Code Ann. §40-35-303(c)(1). However, criminal contempt is not considered a violation of the criminal law, and a suspension of a criminal contempt sentence does not constitute probation. As a result, we conclude the Juvenile Court

---

in concluding Mother willfully violated its July 30 Order. Instead, the court relied on the fact that Father did not have the opportunity to visit with his son as the court directed in its order and that Mother willfully violated the order when she left with the child despite Father's offer to visit with the child alone.

did not err when it suspended Mother's ten-day sentence to the Davidson County workhouse.

This court has addressed the issue of criminal contempt on numerous occasions and has concluded that a criminal contempt proceeding is *sui generis*, or a class unto itself. The Tennessee Supreme Court described criminal contempt proceedings as "sui generis – neither a civil action nor a criminal prosecution as ordinarily understood, nor a criminal prosecution within the Sixth Amendment of the United States Constitution." *Bowdon v. Bowdon*, 278 S.W.2d 670, 672 (Tenn. 1955). As we explained in *Brown v. Latham*:

> Although criminal contempt is a crime, for constitutional purposes, it is not the same as a violation of the criminal law. A defendant committing an act that is both contemptuous and a violation of the criminal law may be punished for both without violating his right to plead former jeopardy. The proceeding in contempt is for an offense against the court as an organ of public justice, and not for a violation of the criminal law. Contempt proceedings are sui generis-- neither a civil action nor a criminal prosecution as ordinarily understood. Thus, a defendant may be jailed for criminal contempt without a trial by jury, but the same defendant may demand a jury trial in a charge of violating a criminal statute if the statute provides that incarceration is one of the choices for punishment.

1994 WL 570102, at *3 (Tenn. Ct. App. 1994) (citations and quotations omitted); *see Ahern*, 15 S.W.3d at 83 (individual charged with criminal contempt under §29-9-102 is not entitled to jury trial); *see also Poff v. Poff*, 1993 WL 73897, *2 (Tenn. Ct. App. 1993) (contempt proceeding is *sui generis,* collateral to and independent of the case or proceeding from which it arises).

Unlike a typical criminal prosecution, which stands or falls on its own set of circumstances, a criminal contempt proceeding is necessarily based on a preexisting court order and is an offense against the court itself. *See Doe v. Board of Professional Responsibility of the Supreme Court of Tennessee*, 104 S.W.3d 465, 474 (Tenn. 2003) (contempt proceeding is *sui generis* and is incidental to the case from which it arises). Moreover, while the state normally prosecutes an alleged perpetrator in a typical criminal proceeding, one of the parties to a court order is typically the one that pursues a criminal contempt proceeding against another party. *See Wilson v. Wilson*, 984 S.W.2d 898, 902-03 (Tenn. 1998) (due process does not preclude beneficiary of civil court order to prosecute action for violation of order); *Long*, 221 S.W.3d at 7 (when accusation of criminal contempt arises from violation of a court order, attorney for opposing party in underlying litigation quite properly pursues contempt charge).

Criminal contempt statutes are not like other criminal statutes that prohibit certain activities, such as driving without a license or selling alcohol to a minor. Rather, they are "punitive in character, and their primary purpose is to vindicate the court's authority." *Thigpen*, 874 S.W.2d at 53 (citing *Gunn v, Souther Bell Tel. & Tel. Co.*, 296 S.W.2d 843, 844 (1956) and *Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)); *see Long*, 221 S.W.3d at 12-13 (criminal contempt sanctions imposed simply as punishment).

It is not unusual for a court that has found an individual in criminal contempt for violating its order to suspend a sentence imposed as a sanction for that contempt. *See Cansler v. Cansler*, 2010 WL 342652, at *10 (Tenn. Ct. App. 2010) (holding §29-9-103 does not mandate a sentence be imposed, and trial court can suspend any sentence it gives); *Thigpen*, 874 S.W.3d at 54 (trial court should have suspended all but one day of sentence imposed for criminal contempt).

Tennessee Code Annotated §40-28-102(5) defines "probation" as:

the release by a court of a person found guilty of a crime, upon verdict or plea, without imprisonment subject to conditions imposed by the court and subject to the supervision of the probation service . . . .

When the Juvenile Court found Mother in criminal contempt, it did not find Mother guilty of a crime. Rather, it found Mother had willfully violated its orders dated January 7, 2009 and July 30, 2009. We conclude Tennessee Code Annotated §40-35-303(c)(1) does not come into play when criminal contempt is at issue and, therefore, it does not affect the court's ability to suspend its ten-day sentence imposed pursuant to Tenn. Code Ann. §29-9-103.

For all of these reasons, we affirm the trial court's decision to suspend Mother's ten-day incarceration in the Davidson County workhouse for so long as she complies with the court's orders during the pendency of this case.

## VIII. Sua Sponte Appointment of Guardian ad Litem and Recusal

Mother's final argument on appeal is that the Juvenile Court erred when it appointed a guardian ad litem at the conclusion of the court's hearing on Father's petition to find Mother in contempt of the court's January 7, 2009 Order. Apparently, neither Father nor Mother had requested a guardian ad litem be appointed, but the court decided *sua sponte*, on its own, to appoint a guardian ad litem for the child. The court explained:

The role for the guardian ad litem is to represent the best interest of the child. There is a pending petition for custody.

She will interview both parents. She will – not much interviewing to be done with a two-year old, but she will certainly see the child. She will see child with both parents. She will represent that child's interest in a custody proceeding.

. . . . .

I am specifically finding that there have been allegations here between the parents that if they were founded would result in dependent neglect.

The record sent up to this Court on appeal does not contain the allegations the Juvenile Court was referring to that caused the court to appoint a guardian ad litem. However, Tennessee Rule of Civil Procedure 17.03 provides in part:

The court shall at any time after the filing of the complaint appoint a guardian ad litem to defend an action for an infant or incompetent person who does not have a duly appointed representative, or whenever justice requires.

The Tennessee Supreme Court interpreted this rule in *Gann v. Burton*, 511 S.W.2d 244, 246 (Tenn. 1974): "Rule 17.03 requires the trial judge to evaluate the total situation surrounding the infant or incompetent and then, if justice requires, a guardian ad litem must be appointed." The *Gann* court explained that this appointment is discretionary, and an appellate court will not overrule such appointment absent an abuse of the trial court's discretion. *Id*. at 246-47; *see Keisling v. Keisling*, 196 S.W.3d 703, 731 (Tenn. Ct. App. 2005) (specific language of Rule 17.03 authorizes trial court to appoint guardian ad litem for minor child); *Button v. Waite*, 208 S.W.3d 366, 368 (Tenn. 2006) (chancellor *sua sponte* appointed guardian ad litem to represent interests of child in custody dispute)*; see also* Tenn. Code Ann. §37-1-149 (a)(1) (at any stage of proceeding court shall appoint guardian ad litem for child where interests of child require guardian).[4]

---

[4]Tennessee Supreme Court Rule 40A is consistent with Tenn. R. Civ. Pro. 17.03 and the case law cited. Section 3(a) of this rule provides:

Consistent with Tennessee Code Annotated section 36-4-132, in a custody proceeding the court may appoint a guardian ad litem when the court finds that the child's best interests are not adequately protected by the parties and that separate representation of the child's best interests is necessary. Such an appointment may be made at any stage of the proceeding.

-14-

Mother does not provide any explanation of why she believes the Juvenile Court may have abused its discretion in appointing a guardian ad litem for her child. We conclude the court was authorized to appoint a guardian ad litem to represent the child's interests in the custody dispute, and therefore affirm the court's appointment.[5]

Finally, Mother complains that the Juvenile Court judge erred in recusing herself during the contempt hearing on July 29, 2009, when the parties did not specifically ask for the judge to recuse herself at that time. The record does not contain anything about the judge's recusal of herself other than the following statement the judge made during the hearing:

> [S]ince there have been allegations both against Magistrate Crawford and against myself, while I don't think that worries me too much, as I said, at least half the people leave here unhappy with me every time they come in court. I am going to recuse myself and send the custody hearing, which will also encompass, Mr. Cate, any child support issue that you might file because I think the custody would have to be determined along with the visitation in order to properly do a worksheet on the issue of child support. I'm going to send that to Magistrate Calhoun. He will be sitting as a special judge.

The decision by a trial court judge to recuse himself or herself is discretionary and will not be reversed on appeal unless the appellant can show the recusal decision was an abuse of discretion. *State v. Hester*, 324 S.W.3d 1, 72-73 (Tenn. 2010). According to Tennessee Supreme Court Rule 10, Canon 3(E)(1):

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . .

The Juvenile Court judge indicated a party had made allegations against her during some prior proceedings. Based on the record, we cannot say the court applied an incorrect legal standard, reached an illogical or unreasonable decision, or caused an injustice to Mother by recusing herself. Therefore, we affirm the Juvenile Court judge's decision to recuse herself.

---

[5]Mother contends the Juvenile Court erred by appointing a guardian ad litem during the contempt hearing. It is clear from a review of the transcript, however, that the parties were also contesting custody of the child, and the court was appointing a guardian ad litem in anticipation of those proceedings, not for any purpose related to the contempt proceedings.

## IX. CONCLUSION

We affirm both of the Juvenile Court's rulings finding Mother in criminal contempt, affirm the court's suspension of Mother's ten-day sentence, affirm the court's admission of The Exchange Club's document as a business record excepted from the rule against hearsay, affirm the court's appointment of a guardian ad litem for the child, and affirm the judge's recusal of herself from the parties' dispute. Costs of the appeal shall be taxed against the appellant, Sherry C. Sloan, for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, JUDGE