IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 9, 2019 Session

## RICHARD ALAN PEARSON v. CHRISTEN CREIGHTON PEARSON

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-0482     JoeDae L. Jenkins, Chancellor**

_____

**No. W2018-01188-COA-R3-CV**
_____

This is a divorce case. Husband filed for divorce after 20 years of marriage. Following a three-day trial, the trial court determined Wife could not be rehabilitated and ordered Husband to pay $9,700 per month in alimony *in futuro*. We conclude that the trial court erred by failing to consider Wife's earning capacity in setting Husband's alimony obligation. Accordingly, we modify Husband's alimony obligation by the amount of Wife's earning capacity as determined by the trial court. Affirmed as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed as Modified and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Donald Capparella and Kimberly Macdonald, Nashville, Tennessee, for the appellant, Richard Alan Pearson.

Leslie Gattas Coleman and Timothy M. Ginski, Memphis, Tennessee, for the appellee, Christen Creighton Pearson.

## OPINION

### I.     Background

Appellant Richard Alan Pearson ("Husband") and Appellee Christen Creighton Pearson ("Wife") were married on May 27, 1995. At the time of the divorce, Husband was 51 years old, and Wife was 58 years old. Wife has three children from a prior marriage, and the parties have two children, both of whom are now adults.

Although neither party graduated from college, Husband began working for his family business in 1985. The family business was eventually bought by Husband's current employer, Ram Tool & Supply. In 2013, Husband began travelling extensively for work managing multiple stores in Texas and a store in Memphis. In 2014, Husband leased an apartment in New Braunfels, Texas and travelled between Memphis and Texas. While in Texas, Husband began an affair with another woman.

On April 10, 2015, Husband filed a complaint for divorce alleging inappropriate marital conduct and irreconcilable differences as grounds. At or around the time he filed the complaint for divorce, Husband moved in with his paramour. On September 9, 2015, Wife filed an answer and counter-complaint for divorce. In her pleading, Wife denied inappropriate marital conduct on her part but alleged that irreconcilable differences existed and that Husband was guilty of inappropriate marital conduct. In August 2017, Wife filed an amended complaint for divorce alleging adultery as an additional ground for divorce.

The trial was held on November 1 and 2, 2017 and January 24, 2018. As this was a long term marriage, two of the major issues at trial were Wife's need for alimony and Husband's ability to pay it. Husband was the sole provider during the parties' marriage earning an average of $358,459.54 per year. His income was comprised of two components: (1) his base salary; and (2) his annual bonus. Typically, Husband took a monthly draw in anticipation of his annual bonus. To support his contention that his future bonuses would not be comparable to those received in years past, Husband introduced a letter from his employer ("Ram Letter"). As discussed below, the letter warned Husband that he should review his monthly draw amount so that he would not face a negative balance for his 2017 bonus. The trial court sustained a hearsay objection from Wife's attorney and refused to admit the letter into evidence.

Although she was a stay-at-home mother during the parties' marriage, at the time of the divorce, Wife was working part-time at Starbucks, where she earned $9.00 per hour. The trial court determined that due to Wife's advanced age, lack of professional experience, and prior academic record, Wife could not be rehabilitated. However, the trial court also determined that Wife had an earning capacity of $28,000.00 per year. According to the trial court's findings of fact and conclusions of law, which it filed on June 7, 2018, Wife needed $9,700.00 per month to sustain a lifestyle similar to that enjoyed during the marriage. The trial court ordered Husband to pay $9,700.00 per month in alimony *in futuro*. Husband appeals.

## II.     Issues

Husband presents three issues for review; however, we perceive that there are 2 dispositive issues, which we state as follows:

1.  Whether the trial court committed reversible error in sustaining Wife's hearsay objection to the Ram Letter.

2.  Whether the trial court erred in calculating either the type and or the amount of alimony.

### III.    Standard of Review

This case was tried by the court sitting without a jury. As such, we review the trial court's findings of fact *de novo* on the record with the presumption that those findings are correct, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. **Gonsewski v. Gonsewski**, 350 S.W.3d 99, 105-106 (Tenn. 2011); **Hyneman v. Hyneman**, 152 S.W.3d 549, 553 (Tenn. Ct. App. 2003).

In this case, the trial court made a specific finding that "Husband's testimony lacks credibility and is self-serving in nature." With regard to credibility determinations, this Court has stated:

> When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings."

**In re M.L.P**., 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing **Seals v. England/Corsair Upholstery Mfg. Co., Inc.**, 984 S.W.2d 912, 915 (Tenn. 1999)); **In re Estate of Leath**, 294 S.W.3d 571, 574–75 (Tenn. Ct. App. 2008). Accordingly, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. **In re M.L.P**., 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing **Seals v. England/Corsair Upholstery Mfg. Co.**, 984 S.W.2d 912, 915 (Tenn. 1999)).

### IV.    Ram Letter

As noted above, during the trial, Husband introduced the Ram Letter, which the trial court refused to admit into evidence on the basis of hearsay. On appeal, Husband argues that the trial court erred in excluding the Ram Letter, which was sent to Husband from his personnel manager. The letter states as follows:

This letter is to inform you that your current draw of $6,000.00 per month should be closely reviewed.

After the first four months of 2017, the net income of your branches is trending down from the previous year. If this trend continues, you could possibly face a negative balance to your 2017 bonus.

Please review your current draw amount and notify me of any changes you would like to make.

In presenting the letter, Husband testified that it was a "letter from the HR department requesting I take a look at my bonus." Wife's counsel objected to the letter on the ground of hearsay. Husband's counsel then asserted that the letter was a business record and, thus, fell within an exception to the hearsay rule. The trial court sustained Wife's objection and excluded the letter from evidence. On a subsequent attempt to enter the Ram Letter into evidence, Husband argued that the letter was introduced to show notice that he should review his draw, which is a "non-hearsay purpose." The trial court did not change its ruling regarding the Ram Letter despite two subsequent attempts by Husband's attorney to enter the letter into evidence.

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801; *Toms v. Toms*, 98 S.W.3d 140, 144 (Tenn. 2003). To be admissible, evidence must conform to the Tennessee Rules of Evidence. However, if a hearsay statement fits under one of the exceptions, the trial court may not use the hearsay rule to suppress the statement. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). The trial court has wide discretion in admitting or excluding evidence and will be reversed on appeal only upon on showing of abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn.1992); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn. App. 1995).

Husband's argument on appeal is two-fold. First, Husband argues that the letter is not hearsay. Second, Husband contends that if the letter is hearsay, it falls within the exception for business records. We will address each argument in turn.

In arguing that the letter is not hearsay, Husband's attorney explained

What I'm moving it into evidence for now is the notice of the draw situation and that it would be stopped . . . . So it's not for the truth of the matter asserted, but notice that it was an issue and we weren't trying to hide the ball from her that his income – his take-home was going to get reduced quite a bit.

Here, Husband testified that he stopped his monthly draw of $6,000.00 after receiving "a letter from the company stating that I need to closely review [my draw], and so I reviewed it." The Ram Letter is an out of court statement made by someone other than Husband, which is offered to prove the substance of its contents (*i.e.* that Husband should review his monthly draw so as not to overdraw his 2017 bonus). Typically, testimony received at trial is accompanied by the safeguards of cross-examination, oath, and the opportunity to observe the demeanor of the witness. Hearsay is inherently unreliable because it lacks these safeguards. The Ram Letter also lacks these safeguards as (1) the author of the letter was not present for cross-examination; (2) the author of the letter could not be observed by the trial court; and (3) the letter was not attached to an oath. For all of these reasons, the Ram Letter was not reliable, and the trial court correctly designated the Ram Letter as hearsay.

A determination that the Ram Letter was hearsay, however, does not end the analysis. Although generally inadmissible, hearsay is admissible as provided by the Tennessee Rules of Evidence or otherwise by law. Tenn. R. Evid. 802; *see also* **Holder v. Westgate Resorts Ltd.**, 356 S.W.3d 373, 378 (Tenn. 2011); **Arias v. Duro Standard Prods. Co.**, 303 S.W.3d 256, 262 (Tenn. 2010).

Tennessee Rule of Evidence 803(6) embodies the exception to the hearsay rule commonly known as the business records exception. Rule 803(6) defines the prerequisites for admission as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Tenn. R. Evid. 803. This Court has explained that Rule 803(6) includes the following five criteria that must be satisfied for a document to be admissible under the business records exception:

1. The document must be made at or near the time of the event recorded;
2. The person providing the information in the document must have firsthand knowledge of the recorded events or facts;
3. The person providing the information in the document must be under

a business duty to record or transmit the information;

4. The business involved must have a regular practice of making such documents; and

5. The manner in which the information was provided or the document was prepared must not indicate that the document lacks trustworthiness.

***Arias,*** 303 S.W.3d at 263 (quoting ***Alexander v. Inman***, 903 S.W. 2d 686, 700 (Tenn. Ct. App. 1995)). Husband argues that he is a "qualified witness" as required by the rule because he "was a witness with knowledge of the letter and its contents as the individual who received the letter." As such, Husband contends that the letter is properly authenticated. It is true that Husband has first-hand knowledge of the stores' overall performance as the manager of the stores in question. Additionally, the letter was not untimely as it was dated May 12, 2017 and referred to the performance of Husband's stores during the first four months of 2017. Assuming, *arguendo*, that the first four factors are met, the trial court made a specific finding that "Husband's testimony surrounding his taking a draw on his bonus [was] self-serving and lacking credibility." As previously noted, we give considerable deference to the trial court's credibility findings. ***In re M.L.P***., 228 S.W.3d at 143. Considering that the Ram Letter lacks trustworthiness because of the manner in which it was provided, it is not admissible as a business record. Even if we assume that it was error to bar the letter from admission into evidence, the error was harmless considering that Husband was allowed to testify about the contents of the letter and discuss the action he took as a result of receiving the letter. This Court has previously concluded that there is no abuse of discretion in the exclusion of evidence about facts already presented before the court. ***Lewis v. Lewis***, No. 01A01-9809-CH-00469, 1999 WL 536272, at *5 (Tenn. Ct. App. July 27, 1999). Accordingly, we find no abuse of discretion in the trial court's exclusion of the Ram Letter.

## V. Alimony

Our legislature has authorized the courts to award alimony in divorce cases "to be paid by one spouse to or for the benefit of the other, or out of either spouse's property, according to the nature of the case and the circumstances of the parties." Tenn. Code Ann. §36-5-121(a). To guide the courts in determining whether an award of alimony is appropriate, and the nature and amount of that award, the legislature has set out a list of factors for the trial courts to consider. Tenn. Code Ann. 36-5-121(i). These factors include, *inter alia,* "the relative earning capacity, obligations, needs, and financial resources of each party" as well as the duration of the marriage. Tenn. Code Ann. §36-5-121(i)(1). However, our courts have frequently stated that, in determining the proper amount of alimony to award, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay. ***Cain-Swope v. Swope***, 523 S.W.3d 79, 95-96 (Tenn. Ct. App. 2016); ***Riggs v. Riggs***, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007) (citing ***Robertson v. Robertson***, 76 S.W.3d 337,

342 (Tenn. 2002); ***Bogan v. Bogan***, 60 S.W.3d 721, 730 (Tenn. 2001). When considering these two factors, the primary consideration is the disadvantaged spouse's need. ***Riggs,*** 250 S.W. 3d at 457 (citing ***Aaron v. Aaron***, 909 S.W.2d 408, 410 (Tenn. 1995)); ***Watters v. Watters***, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999).

Generally, the amount of an alimony award is deemed to be in the sound discretion of the trial court, and the trial court's determination will not be reversed on appeal unless that discretion is abused. ***Burlew v. Burlew***, 40 S.W.3d 465, 470 (Tenn. 2001); ***Morton v. Morton***, 182 S.W. 3d 821, 836 (Tenn. Ct. App. 2005); ***Lindsey v. Lindsey***, 976 S.W.2d 175, 180 (Tenn. Ct. App. 1997). The Tennessee Supreme Court explained the abuse of discretion standard as follows in ***Eldridge v. Eldridge***, 42 S.W. 3d 81, 84 (Tenn. 2001):

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***State v. Scott,*** 33 S.W.3d 746, 752 (Tenn. 2000); ***State v. Gilliland,*** 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***State v. Shirley,*** 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. ***Myint v. Allstate Ins. Co.,*** 970 S.W.2d 920, 927 (Tenn. 1998).

***Id; also see Broadbent v. Broadbent***, 211 S.W.3d 216, 220 (Tenn. 2006); and ***Robertson***, 76 S.W.3d 343. In accordance with the above standard, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence. . . ." ***Kinard v. Kinard***, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); ***Brown v. Brown***, 913 S.W.2d 163, 169 (Tenn. Ct. App. 1994).

Here, Husband's argument concerning the type and amount of alimony is three-fold. First, he contends that he does not have the ability to pay $9,700.00 per month due to the fact that the trial court ordered him to pay all of the marital debt. Second, Husband contends that the trial court should have ordered a portion of Wife's alimony to be rehabilitative alimony. Finally, Husband contends that the trial court erred in failing to consider Wife's earning capacity in setting the amount of support. We will address each of these arguments in turn.

## A.     Husband's Ability to Pay Alimony

Due to the fact that Husband was charged with all marital debt and a portion of Wife's attorney's fees as alimony *in solido*, Husband argues that the trial court erred both in calculating Husband's income and in finding that Husband has the ability to pay

alimony in the amount of $9,700.00 per month. According to Husband, he is unable to pay any alimony in excess of $4,000.00 per month. "Determining . . . what a [parties'] potential income would be [is] a question [ ] of fact that require[s] careful consideration of all the attendant circumstances." ***Bordes v. Bordes***, 358 S.W.3d 623, 630 (Tenn. Ct. App. 2011) (quoting ***Richardson v. Spanos,*** 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005)).

Turning to the record, in 2013, Husband was managing four stores in Texas and a store in Memphis for Ram Tool & Supply Co. Husband testified that the stores he manages are profitable despite his allegation that the industry slowed in 2015. Husband's gross annual incomes for 2015 and 2016 were $333,370.29 and $383,584.79 respectively. Taking the average of his 2015 and 2016 salaries and bonuses, the trial court determined that Husband's income was $358,459.54 per year. In the case of ***Andrews v. Andrews***, 344 S.W.3d 321, 343 (Tenn. Ct. App. 2010), this Court approved the trial court's determination of Husband's income when the trial court set an amount based on the average of multiple tax returns.

Here, as in the ***Andrews*** case, the trial court's finding of Husband's income was derived in part from its assessment of Husband's credibility. ***Id***. In this case, the trial court made a specific credibility finding that "Husband's testimony surrounding his taking a draw on his bonus is self-serving and lacking credibility." As discussed above, this court affords great weight to credibility findings. ***In re M.L.P.***, 228 S.W.3d at 143. In determining Husband's income, the trial court averaged the most recent two years of Husband's income available at the time of trial. Despite Husband's argument that his bonus in 2017 will be substantially less than in years past, Husband historically has taken a draw on his bonus and has not needed to repay his employer for an overdraw since 2010. As found by the trial court, this suggests that he will likely receive large bonuses in the future. Based on the foregoing analysis, the evidence, especially when viewed in light of the trial court's credibility finding does not preponderate against the trial court's determination of Husband's income.

Husband also contends that his alimony obligation should be reduced based on the fact that Husband received all of the debt in the distribution of the marital estate. We concede that the debt is not insignificant as it includes: (1) $26,659.00 owed on the parties' vehicles; (2) $127,792.00 in student loans for the adult children; (3) approximately $45,000.00 in credit card debt; and (4) approximately $126,000.00 in attorneys' fees. However, given the disparity between the parties' incomes, the trial court had few other options. In fact, William Robert Vance, Jr., Husband's forensic accountant, acknowledged during trial that allocating all of the marital debt to Husband was the only practical division.

At trial, Mr. Vance submitted a report demonstrating his projections for the financial future of both parties if Husband were to pay $4,000.00 in alimony for ten

years, the amount Husband contends is the maximum he can pay. According to Mr. Vance's report, Wife will have a negative balance in her investment account by the time she reaches age 70. In contrast, despite having assumed all of the parties' debt, Husband is projected to have an investment savings of $2,494,836.00 when he reaches age 70. In calculating Husband's ability to pay alimony, Mr. Vance's schedule showed Husband paying off his entire debt in five years. The trial court found that this schedule of debt payment painted an "artificial picture about Husband's ability to pay." We agree. Given Husband's annual income, which is well in excess of $300,000.00, Husband has many refinancing options at his disposal that create more flexibility in his monthly budget. While Husband may need to make some adjustments concerning his finances, his income provides the ability to pay alimony and to service the marital debts. Accordingly, we conclude that he has the ability to pay alimony at the level set by the trial court.

## B.     Type of alimony

As set out in the trial court's findings of fact and conclusions of law, the trial court determined that

> [Wife] has very little in the way of practical skills as she has not held a formal job for over thirty years (30) aside from her current job as a barista at Starbucks and her employability decreases with her age. Her academic record is poor and shows little to no promise of future academic success. She has a limited ability to earn beyond her current state and rehabilitation is unable to boost her earning capacity to a reasonable level. Economic rehabilitation of Wife is not feasible.

Husband argues that the trial court erred in not designating a portion of Wife's alimony as rehabilitative alimony. Dr. David Strauser, Husband's vocational expert, testified that education leads to more money. Husband contends that Wife can be partially rehabilitated with very little training. According to Husband, Wife could "move up to a management position" with less than two years of training and two additional years of work experience.

Rehabilitative alimony is short-term support that enables a disadvantaged spouse to acquire additional education or training so that the spouse can achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse. *See* Tenn. Code Ann. § 36-5-121(e)(1). *See also* **Robertson v. Robertson**, 76 S.W.3d 337, 340-41 (Tenn. 2002); **Riggs v. Riggs**, 250 S.W.3d 453, 456 n. 4 (Tenn. Ct. App. 2007). The purpose of rehabilitative alimony is to assist the disadvantaged spouse in becoming self-reliant following a divorce. **Gonsewski v. Gonsewski**, 350 S.W.3d 99, 108 (Tenn. 2011); **Robertson**, 76 S.W.3d at 340-41; **Isbell v. Isbell**, 816 S.W.2d 735, 738-39 (Tenn. 1991). In contrast, alimony *in futuro* is a form of long-term support awarded on a "long term

basis or until death or remarriage of the recipient" spouse. Tenn. Code Ann. §36-5-121(f)(1). This type of alimony is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012) (citing *Gonsewski*, 350 S.W.3d at 107).

In this case, Wife was 58 years old at the time of trial. The trial court specifically found that "Wife has a need for $9,700.00 a month to sustain her level of living provided during the marriage," and neither of the parties appeals this finding. Prior to obtaining a part-time job at Starbucks, Wife had not been employed for over 30 years. Although Wife attended the University of Tennessee at Knoxville (UTK), she did not graduate. Although he opined that that Wife could earn between $18,000 and $30,000, Dr. Strauser testified that Wife's age negatively affected her ability to find employment. At trial, Mr. Vance was asked, "[W]hat is [Wife] supposed to live off after 10 years?" He responded, "That's not within my analysis. I mean, she'll just have to get a better-job." However, in view of Dr. Strausser's testimony, Wife's ability to "get a better job" seems proverbially easier said than done. Despite Mr. Vance's rather cavalier advice, his report, as discussed in greater detail above, clearly illustrates that without ongoing lifetime assistance, Wife will never be able to support herself at any level near that enjoyed during the marriage. From the totality of circumstances, we conclude that the trial court correctly determined that Wife is in need of long-term support, and we affirm the trial court's award of alimony *in futuro*.

## C.    Wife's Earning Capacity

As noted above, the trial court found that Wife needs $9,700.00 per month to sustain a lifestyle similar to that enjoyed during the marriage. The trial court further found that Wife has an earning capacity of $28,000.00 per year, or $2,333.33 per month. Neither party raises a specific issue concerning this determination. Assuming, therefore, that Wife has need of $9,700.00 per month and is capable of earning $2,333.33, it is clear that the trial court, in charging Husband with $9,700.00 per month in alimony, did not consider Wife's earning capacity in its calculation. Although we determined, supra, that Husband has the ability to pay alimony in the amount ordered, Tennessee Code Annotated section 36-5-121(i)(1) provides that "[T]he court shall consider . . . [t]he relative earning capacity . . . of each party . . ." in setting the amount of alimony. The legislature's use of the word "shall" is mandatory. *See*, e.g., *Myers v. AMISUB (SFH), INC. d/b/a St. Francis Hospital, et al.*, 382 S.W.3d 300, 308 (Tenn. 2012) (citation omitted) ("[U]se of the word 'shall' in . . . statutes indicates that the legislature intended the requirements to be mandatory, not directory.")

Concerning a trial court's failure to consider the relative earning capacities of the spouses in contravention of the mandatory statutory language, supra, in the recent case of

*Ellis v. Ellis*, No. W2017-02287-COA-R3-CV, 2019 WL 410704, at *4 (Tenn. Ct. App. 2019), this Court held:

> After our review of the record, we are of the opinion that the trial court's alimony *in futuro* award should be vacated and remanded for reconsideration. . . . [T]he trial court, in making its alimony award, failed to consider its other findings that Wife could "reasonably re-enter the employment market" and "is capable of earning a reasonable income as a nurse based on her education, training and background" even though Wife stated she had no intention of returning to work. The trial court based these findings on the reports and testimony provided by both Husband's and Wife's vocational experts. Husband's expert testified at trial and provided in his report that, if Wife re-entered the employment market as a registered nurse, she could earn at least $24.10 per hour or $4,177 per month in income. Wife's expert testified that Wife could earn at least $13.42 per hour or $2,326 per month. In determining the amount of alimony *in futuro* to award Wife, however, the trial court did not factor in these wage ranges provided by both parties' experts, despite the fact that the relative earning capacity of both parties is one of the statutory factors the trial court must consider when calculating such an award. *See* Tenn. Code Ann. § 36-5-121(i)(1). This Court has observed that, after the trial court has determined an amount of income "which will provide for the wife to live in the manner to which she became accustomed during the marriage[, f]rom this amount should be subtracted her reasonably anticipated income[.]" ***Duncan v. Duncan***, 686 S.W.2d 568, 572 (Tenn. Ct. App. 1984).

*Ellis*, 2019 WL 410704, at *4. The sole distinction between the instant appeal and *Ellis* is that, in *Ellis*, the trial court did not make a specific finding concerning wife's earning capacity; rather, the court failed to "factor [the] ranges [of wife's earning capacity] provided by the both parties' experts." *Id*. Here, the trial court determined that Wife has the capacity to earn $2,333.33. The error here is the same as that in *Ellis*, i.e., the trial court failed to consider the disadvantaged spouse's earning capacity. However, unlike *Ellis*, in this case, we are able to calculate the correct amount of alimony because the trial court made a finding as to Wife's earning capacity. Having affirmed the trial court's conclusion that Husband has the ability to pay alimony in future in the amount originally ordered, i.e., $9,700.00, we modify the trial court's order to reflect a monthly alimony amount of $7,366.67, which is the amount of Wife's need, i.e., $9,700.00 less her monthly earning capacity of $2,333.33.

## V. Conclusion

For the foregoing reasons, the order of the trial court is modified to reduce Husband's alimony *in futuro* obligation to $7,366.67 per month. The trial court's order is

- 11 -

otherwise affirmed, and the case is remanded to the trial court for entry of a judgment and for any other proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against Appellant, Richard Alan Pearson, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE